BRAD LEE WILLERS, A MINOR CHILD, BY AND THROUGH HIS MOTHER AND NEXT FRIEND, CAROLE L. POWELL, APPELLEE, v. GARY LEE WILLERS, APPELLANT.

587 N.W. 2d 390

Filed December 18, 1998.   No. S-97-788.

Forrest F. Peetz, of Peetz & Peetz, for appellant.

Gina L. Schaecher, of Domina Law, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

HENDRY, C.J.

## QUESTION PRESENTED

The question presented is whether the parental duty to support minor children can be enforced retroactively to the date of the divorce decree where a child is born in wedlock and the parents are subsequently divorced, but the divorce decree is silent on the issue of child support.

## BACKGROUND

Gary Lee Willers and Carole L. Powell, formerly known as Carole L. Willers, were married on August 11, 1978, in Plainview, Nebraska. One child, Brad Lee Willers, was born to the marriage on December 13, 1979. From Brad's birth until approximately July 14, 1982, the parties lived together as a family in the State of Nebraska. On July 15, Powell received a telephone call from a relative informing her that her mother was ill. The relative informed Powell that she was needed to help care for her mother, who was living in the State of Washington. Powell asked Willers if she could go to Washington to be with her mother and, further, if she could take Brad with her. Willers consented, and Powell, together with her 2½-year-old son, traveled to Washington.

On September 8, 1982, Powell filed a petition for dissolution of marriage in the Superior Court for King County, Washington. Willers received personal service of summons and the petition in Nebraska, yet failed to file any responsive pleadings. On June 10, 1983, Willers was personally served with a motion and order for default and presentation of findings, conclusions of law, and a decree of dissolution. On September 19, the Washington court dissolved the marriage and awarded Powell permanent care, custody, and control of Brad, subject to Willers' reasonable visitation rights. The Washington court refused to grant Powell a child support order, finding that "[t]his court has no personal jurisdiction over [Willers] to make an award against him regarding child support."

After the divorce, Powell supported Brad by working outside the home as a drug and alcohol counselor. A year later, in 1984, she married Ed Powell. She continued working outside the home until sometime in 1984 when Brad's extreme asthmatic

condition required her immediate and constant attention. From 1984 until 1988, Powell did not work so she could stay at home and care for Brad.

In 1988, Brad's asthmatic condition improved to the point where he was able to attend school on a regular basis. As a result, Powell was also able to return to work. However, on October 15, 1990, Powell was permanently injured in an automobile accident. Due to the injuries sustained in the accident, Powell's medical condition prevented her from retaining employment outside the home. From this time forward, the Powell family was supported solely by Ed Powell, other family members, and friends.

Willers concedes that he contributed no support to Brad's upbringing other than attempting to send Brad a card, a $50 money order, a book, and a toy tractor. Willers testified that the birthday card and money order were returned to him unopened, but he is unsure whether Brad ever received the other items. Willers also conceded that even though he "had an idea" where Brad was located, he made no attempt to make arrangements to pay child support after the divorce.

Powell stated that due to the level of Willers' contributions, Brad urged her to seek child support on his behalf. Powell testified that she did not want to bring the action, but upon Brad's insistence she began the process of trying to obtain child support. On April 23, 1996, Powell filed suit on behalf of Brad in the Antelope County District Court against Willers, seeking to establish retroactive and prospective child support. Willers filed an amended responsive pleading and alleged the claim for support was barred under the equitable theory of laches.

Powell filed a reply to Willers' response and reaffirmed that she had brought the action on behalf of Brad. On March 27, 1997, Willers filed a motion for partial summary judgment, alleging that there were no genuine issues of material fact and that he was not liable for retroactive child support prior to the date the petition for child support was filed in the Antelope County District Court. Powell also filed a motion for partial summary judgment and urged the court to award her retroactive and prospective child support.

The district court heard both motions and in its written order of May 22, 1997, determined there was no genuine issue of material fact regarding Willers' liability for retroactive and prospective child support and entered judgment in favor of Powell. In support of the district court's decision, the district court found that no support order was entered at the time the divorce decree was granted because the Washington court lacked personal jurisdiction over Willers and that no other court had exercised jurisdiction to enter a support order. The district court further found that Willers had a duty to support Brad and that he had failed to provide financial support since the marriage dissolution. The district court also found that Willers was able bodied and capable of providing support at all relevant times.

The case proceeded to trial to determine the overall amount of child support to be awarded and to determine Willers' liability for costs, attorney fees, and expenses. In its judgment filed July 14, 1997, the district court calculated child support by applying the Nebraska Child Support Guidelines to the parties' average monthly income figures. From these calculations, the court determined Willers' overall retroactive and prospective child support obligation and ordered him to pay the sum of $34,082.08 as retroactive child support and $159 per month in future support. The district court also awarded Powell $2,000 in attorney fees and taxed the costs of the proceedings to Willers.

Willers perfected his appeal, and on October 14, 1997, filed a petition to bypass the Nebraska Court of Appeals. We granted Willers' petition to bypass and removed the case.

## ASSIGNMENTS OF ERROR

Willers contends, rephrased and summarized, that the district court erred in (1) awarding child support payments retroactively to September 19, 1983, the date of the Washington divorce decree; (2) precluding him from introducing evidence regarding the circumstances surrounding the parties' divorce; (3) precluding him from introducing evidence regarding the alleged difficulties he encountered trying to enforce his visitation rights; and (4) failing to allow him the opportunity to make offers of

proof regarding the defense of laches and the alleged difficulties he encountered trying to enforce his visitation rights.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *American Family Ins. Group v. Hemenway*, 254 Neb. 134, 575 N.W.2d 143 (1998). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Barnett v. Peters*, 254 Neb. 74, 574 N.W.2d 487 (1998). In reviewing an order granting a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Miller v. City of Omaha*, 253 Neb. 798, 573 N.W.2d 121 (1998).

Statutory interpretation presents a question of law. *State ex rel. Garvey v. County Bd. of Comm.*, 253 Neb. 694, 573 N.W.2d 747 (1998). In connection with questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Billups v. Troia*, 253 Neb. 295, 570 N.W.2d 706 (1997).

With respect to statutory interpretation, the court will, if possible, try to avoid a construction which would lead to absurd, unconscionable, or unjust results. *Hilliard v. Robertson*, 253 Neb. 232, 570 N.W.2d 180 (1997). In so doing, the court must look to the statutory objective to be accomplished, the evils and mischiefs sought to be remedied, and the purpose to be served, and then must place on the statute a reasonable or liberal construction that best achieves the statute's purpose, rather than a construction that defeats the statutory purpose. *Brown v. Wilson*, 252 Neb. 782, 567 N.W.2d 124 (1997).

## ANALYSIS

In Willers' first assignment of error, Willers claims the district court erred in awarding child support payments retroactively to September 19, 1983, the date of the Washington

divorce decree. Willers claims the district court incorrectly characterized the action as being governed by Neb. Rev. Stat. § 42-733 (Reissue 1993) and not Neb. Rev. Stat. § 43-512.04(2) (Cum. Supp. 1994). Section 42-733(a) provides: "If a support order entitled to recognition under the Uniform Interstate Family Support Act has not been issued, a responding tribunal of this state may issue a support order if: (1) the individual seeking the order resides in another state . . . ." In the district court's order granting retroactive child support, the court quoted § 42-733(a) and determined that the district court was a responding tribunal which was obligated to enforce a support order entitled to recognition.

Section 42-733 is not applicable under the facts of this case. Section 42-733 applies to situations where an existing support order which has been entered by one state court (the initiating tribunal) is sought to be enforced (recognition) in another state court (the responding tribunal). See Neb. Rev. Stat. § 42-702 (Reissue 1993) and § 42-733. In this case, no support order existed to be enforced or recognized. The Washington court expressly refused to grant Powell child support because the court lacked personal jurisdiction over Willers. As a result, the Nebraska district court was not a responding tribunal, but, rather, an initiating tribunal. The appropriate analysis involves an interpretation of § 43-512.04.

Section 43-512.04(1) provides that "[a]n action for child support . . . may be brought in the district court separate and apart from any action for dissolution of marriage. Such action for support may be filed on behalf of a child . . . [w]hose paternity has been established . . . by the marriage of his or her parents . . . ." Even though Willers concedes that § 43-512.04 is the applicable statute, he claims that retroactive child support payments are still prohibited. Willers contends that because § 43-512.04 was amended on July 1, 1994, adding the additional language authorizing children to bring an action through their next friend, retroactive child support can be permitted, if at all, only to the operative date of the statute, July 1, 1994. In support of his claim, Willers cites this court's holding in *In re Application U-2*, 226 Neb. 594, 413 N.W.2d 290 (1987), for the proposition that a legislative act will operate only prospectively, and not

retroactively, unless the legislative intent and purpose of the statute to operate retroactively is clearly disclosed.

While this may be a correct statement of law, Willers fails to recognize that the *In re Application U-2* court rejected an argument against retroactivity where the statute in question was silent on the issue. *In re Application U-2* involved an application for recognition of underground water storage pursuant to Neb. Rev. Stat. § 46-226.01 (Reissue 1984). In *In re Application U-2*, appellants claimed that § 46-226.01 should not be given retroactive effect because the statute did not disclose any reference to a retroactive application allowing for recognition of incidental underground storage occurring prior to August 26, 1983, the effective date of the statute. This court disagreed with appellants' position and noted that in considering and applying a statute, courts must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language thereof, considered in its ordinary sense. *Id.* (citing *Clinchard v. White*, 223 Neb. 139, 388 N.W.2d 477 (1986)). This court noted that while § 46-226.01 does not, in and of itself, indicate a legislative intent to apply the statute retroactively, the components of a series or collection of statutes pertaining to a certain subject matter which are in pari materia may be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions of the act are consistent, harmonious, and sensible. *Id.* See, e.g., *In re Invol. Dissolution of Battle Creek State Bank*, 254 Neb. 120, 575 N.W.2d 356 (1998); *SID No. 2 v. County of Stanton*, 252 Neb. 731, 567 N.W.2d 115 (1997). The *In re Application U-2* court then considered various other statutes addressing the same or similar issues. This court concluded that when read collectively, it was clear that the intent of the Legislature was to apply the statutes concerning the recognition of incidental underground water storage retroactively to include the recognition of incidentally stored water occurring prior to the effective date of those statutes.

In the instant case, neither the plain language nor the legislative history of § 43-512.04 indicates an intent to permit or prohibit retroactive child support payments. See, 1994 Neb. Laws, L.B. 1224; 1991 Neb. Laws, L.B. 457; 1976 Neb. Laws, L.B.

926. However, this does not end our inquiry. We must next determine whether the various statutes pertaining to the establishment, enforcement, and liability of child support reveal a legislative intent to prohibit or permit retroactive child support payments. See *In re Application U-2, supra.*

Several Nebraska statutes historically pertaining to child support fail to indicate one way or the other whether retroactive child support payments should be permitted or denied. See, Neb. Rev. Stat. § 42-701 et seq. (Reissue 1993); Neb. Rev. Stat. § 42-762 et seq. (Reissue 1988); Neb. Rev. Stat. § 42-762 et seq. (Reissue 1974); Neb. Rev. Stat. § 42-701 et seq. (Reissue 1952). However, this court has determined that Neb. Rev. Stat. § 43-1402 (Reissue 1993), which is in pari materia with § 43-512.04, exhibits a legislative intent to provide children born out of wedlock child support retroactively to the date of birth. See, *State on behalf of Joseph F. v. Rial,* 251 Neb. 1, 554 N.W.2d 769 (1996); *Sylvis v. Walling,* 248 Neb. 168, 532 N.W.2d 312 (1995); *State on behalf of S.M. v. Oglesby,* 244 Neb. 880, 510 N.W.2d 53 (1994); *State on behalf of Matchett v. Dunkle,* 244 Neb. 639, 508 N.W.2d 580 (1993).

In *Dunkle, supra,* this court first addressed the question whether children born out of wedlock are entitled to child support retroactively to the date of birth. In *Dunkle,* the appellant filed suit, seeking paternity and retroactive child support to the date of birth. The appellant based her claim to retroactive child support on § 43-1402. Section 43-1402 provides, in pertinent part, that "[t]he father of a child whose paternity is established either by judicial proceedings or by acknowledgment as hereinafter provided shall be liable for its support to the same extent and in the same manner as the father of a child born in lawful wedlock is liable for its support."

Resolving the issue, this court initially noted that the plain words of § 43-1402 require that out-of-wedlock children be supported to the same extent and in the same manner as children born in wedlock. Citing our own holding in *In re Interest of C.D.C.,* 235 Neb. 496, 455 N.W.2d 801 (1990), we noted that parents have a duty to provide their children with the basic necessities of life. From the language of § 43-1402 and our prior holdings regarding the duty of support, this court deter-

mined that a child born out of wedlock was entitled to child support retroactively to the date of birth, stating:

> It is obvious that such a requirement [the duty of support] must begin at the time of the child's birth, for it is at that time that a child is most helpless and most dependent upon its parents for the child's very survival. This is true for any child, not just for a child born in wedlock.

*Dunkle*, 244 Neb. at 644, 508 N.W.2d at 583. This court reasoned:

> When paternity is legally established, there is no rational basis to distinguish the support obligations of a father to a child born out-of-wedlock from the support obligations of a father to a child born in wedlock, and an out-of-wedlock child should be entitled to support from its father from the time of birth under the provisions of § 43-1402. We can perceive of no other way in which an out-of-wedlock child whose paternity is legally established could be supported by its father "to the same extent and in the same manner" as a child born in wedlock.

*Id.*

From our holding in *Dunkle* and the lineage of cases that followed, the law is firmly established that children born out of wedlock are entitled to the same duty of support as children born in wedlock. Our interpretation of § 43-1402 makes this point emphatically clear. A child born out of wedlock is entitled to child support retroactively to the date of birth, because it is upon the child's birth that the parental duty of support commences. The same is true for a child born in wedlock, and such duty toward a minor child does not terminate upon divorce. At divorce, the duty of support is merely quantified.

In this case, the Washington court did not have jurisdiction to quantify that duty of support. Because the Washington court lacked jurisdiction, that duty devolved to the district court, which possessed the requisite jurisdiction. In exercising that jurisdiction, the district court was merely enforcing Brad's right to support owed him by his father. Under these circumstances, that right of enforcement accrued on the date of the divorce decree, and to enforce that right retroactively is consistent with

this court's rationale in *Dunkle, supra*, as well as the general support obligation parents owe their minor children.

Willers cites this court to cases which allegedly stand for the proposition that retroactive child support payments cannot be granted to children born in wedlock. For example, Willers cites to the holdings in *Dean v. Dean*, 4 Neb. App. 914, 552 N.W.2d 310 (1996), and *Meyer v. Meyer*, 17 Ohio St. 3d 222, 478 N.E.2d 806 (1985), to support his claim that retroactive child support payments should be denied. In *Dean*, the Court of Appeals addressed the issue of whether a *child support modification* may be ordered to be retroactive to a date prior to the filing of the application to modify. The court did not address whether the parental duty to support minor children could be enforced retroactively to the date of the divorce decree where a child is born in wedlock, the parents are subsequently divorced, but the divorce decree is silent on the issue of child support. The court recognized this distinction and specifically stated:

> This case is distinguishable from . . . actions in which there is no previous order of the court deciding the issue of support. [Appellant] does not cite us to, nor does our research disclose, any child support *modification* cases in which a court has allowed child support retroactive to a date prior to the date of the filing of the application.

(Emphasis in original.) *Id.* at 919, 552 N.W.2d at 313.

In *Meyer, supra*, the Ohio Supreme Court addressed the issue of whether a custodial mother is entitled to reimbursement where no support order was made or requested at the time the mother received custody of the minor children. In *Meyer*, the court analyzed the issue as if the mother had filed a petition for *modification* of support. The court ultimately ruled against the mother and reasoned that while child support orders are subject to modification, such orders apply prospectively only.

All of the other cases cited by Willers specifically addressing this issue were also characterized as motions to modify. We are cognizant that the general rule in Nebraska has been to allow a modification of a child support order prospectively from the time of the modification itself. See *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991). The case at bar, however, does not involve a modification order. It involves the legal

enforcement of the parental duty to support where the divorce decree contained no order of support.

Our conclusion is amply supported by decisions from other jurisdictions holding that such a proceeding is not a modification proceeding. See, *Warren v. Hart*, 747 P.2d 511 (Wyo. 1987); *Williams v. Williams*, 498 S.W.2d 585 (Mo. App. 1973), *overruled on other grounds* 510 S.W.2d 452 (Mo. 1974). See, also, *Scaling v. Scaling*, 805 P.2d 866, 870 (Wyo. 1991) (holding that decree silent on issue of child support is "not a motion to modify; rather '[i]t is merely ancillary or supplemental . . .'"); *Armstrong v. Sparks*, 360 So. 2d 1012 (Ala. Civ. App. 1978) (holding that where decree is silent as to support, there is nothing for court to modify, and action for support should have been treated as supplementary petition). See, e.g., *Marriage of Nelson*, 27 Or. App. 167, 555 P.2d 806 (1976); *Wacaster v. Wacaster*, 220 So. 2d 914 (Fla. App. 1969); *Wiles v. Wiles*, 211 Or. 163, 315 P.2d 131 (1957); *Effland v. Effland*, 171 Kan. 657, 237 P.2d 380 (1951); *Mack v. Mack*, 91 Or. 514, 179 P. 557 (1919); *Gibbons v. Gibbons*, 75 Or. 500, 147 P. 530 (1915).

In sum, we find none of the cases cited by Willers applicable to the case at bar. We also find that the parental duty to support minor children can be enforced retroactively to the date of the divorce decree where a child is born in wedlock, the parents are subsequently divorced, but the divorce decree is silent on the issue of child support.

In Willers' three remaining assignments of error, Willers claims that the district court erred in denying him the opportunity to introduce certain evidence and to make offers of proof regarding the defense of laches and his visitation rights. Because Willers' remaining assignments of error are interrelated, we will address them together. See *Schindler v. Mulhair*, 132 Neb. 809, 273 N.W. 217 (1937).

Both parties having filed motions for partial summary judgment requesting that the district court resolve the issue of retroactive child support, the court entered judgment in favor of Powell on this issue. The court stated that "[w]hile the right to child support may be barred by laches, an unreasonable delay in seeking support cannot waive the right of the child to support, or remove the obligation of the father to support the child"

(quoting 67A C.J.S. *Parent and Child* § 75 at 390 (1978)). The court concluded that the defense of laches was inapplicable because the action was "brought on behalf of the child, Brad, and not on his custodial parent's behalf."

The case proceeded to trial on the remaining issue of the amount of child support. During trial, Willers attempted to introduce evidence regarding the defense of laches and his alleged difficulty in exercising visitation. Specifically, Willers attempted to introduce into evidence copies of the Washington court proceedings, conduct direct examination regarding the circumstances surrounding the parties' divorce, and conduct direct examination regarding the alleged obfuscation of his visitation rights. Opposing counsel objected to the introduction of this evidence, which the district court sustained. Willers then requested permission to make offers of proof on each issue. Each time Willers requested to make an offer of proof, he indicated that the offers were intended to reveal the district court's error in permitting retroactive child support payments. Willers specifically stated that the Washington court proceedings directly related to the defense of laches. Willers also stated that Nebraska case law indicates that an unreasonable interruption of visitation rights concomitantly affects the collection of child support payments.

The court rejected the offers of proof and ruled that the retroactive child support issue had been decided by summary judgment. The district court reasoned that to attempt to introduce evidence at this time would run counter to the order granting partial summary judgment. The district court did not address this issue further in its judgment entered after trial.

On appeal to this court, Willers argues the district court erred in denying him the opportunity to introduce evidence and to make offers of proof regarding the defense of laches and his visitation rights. Willers claims that laches is a viable defense because Powell "prejudiced Willers in that he is now confronted with the imposition of a judgment in the amount of $34,082.08" by "sitting back and doing nothing for thirteen years and then coming forward under the guise of an action brought as next friend for her son . . . ." Brief for appellant at 22.

Willers' claims that the district court erred in denying him the opportunity to introduce evidence and to make offers of proof regarding the defense of laches and his alleged difficulty in enforcing his visitation rights are without merit.

Willers cites *Welch v. Welch*, 246 Neb. 435, 519 N.W.2d 262 (1994), as authority for the proposition that a noncustodial parent who unduly frustrates visitation rights can have child support suspended; as such, Willers claims that evidence of his difficulties in exercising his visitation rights should have been allowed. However, *Welch* does not stand for the proposition that difficulty in exercising visitation rights can release a parent from the initial duty of support. In *Welch*, this court merely recognized a court's power to suspend a court-ordered judgment of child support as a last resort when the custodial parent deprives the noncustodial parent of visitation. In this case, there was no existing judgment of support subject to suspension or reduction. See, also, *McGee v. McGee*, 190 Neb. 415, 209 N.W.2d 339 (1973). Furthermore, unlike the facts in *McGee, supra*, the evidence in the record shows that at the time Powell took Brad to the State of Washington, there was no existing court order preventing such a move. Under these circumstances, the district court did not err in sustaining Powell's objection to the introduction of such evidence at trial.

Willers' claim that the district court erred in denying him the opportunity to introduce evidence on the issue of laches is also unpersuasive. Assuming, without deciding, that laches is a viable defense in a proceeding to enforce an initial obligation of support, any such offer was untimely in the case at bar.

The district court had already granted Powell's motion for summary judgment by determining there was no issue of material fact regarding Willers' liability for retroactive child support. Trial was had merely to determine the amount of child support Willers owed.

The defense of laches does not go to the amount owed, but, rather, to whether Willers owed any child support at all for the period in question. If Willers thought there was a material issue of fact concerning laches, that evidence should have been introduced in opposition to Powell's motion for summary judgment.

Therefore, the district court did not err in excluding such evidence at trial.

Finally, Willers claims the district court erred in refusing his request to make offers of proof on the issues of laches and his alleged difficulty in exercising visitation. Assuming, without deciding, that the district court should have permitted Willers to make offers of proof, we nonetheless conclude that Willers' offers were not relevant and, therefore, were not prejudicial. Since Willers was not prejudiced, any error is harmless. In *Ashby v. First Data Resources*, 242 Neb. 529, 534, 497 N.W.2d 330, 335 (1993), this court held that " ' "[e]rror without prejudice provides no ground for appellate relief" ' " (quoting *In re Interest of R.R.*, 239 Neb. 250, 475 N.W.2d 518 (1991)). We therefore find that any error committed by the district court was harmless. See, *Ashby, supra*; *In re Interest of R.R., supra.*

The only remaining issue needing to be addressed is Powell's request for attorney fees. Neb. Ct. R. of Prac. 9F (rev. 1996) requires that "[a]ny person who claims the right . . . to an attorney fee in a civil case appealed to the Supreme Court . . . must file a motion for the allowance of such a fee supported by an affidavit which justifies the amount of the fee sought . . . ." Powell's counsel filed the requisite motion for the allowance of such a fee but failed to file a supporting affidavit. We confronted a similar situation in *DeCoste v. City of Wahoo, ante* p. 266, 583 N.W.2d 595 (1998), where we permitted counsel 2 weeks' leave to file a rule 9F motion and affidavit in support thereof where the attorney failed to file either the motion or the affidavit. Powell's counsel is thereby granted 2 weeks' leave to file a rule 9F affidavit in support of Powell's motion for attorney fees.

## CONCLUSION

The district court's judgment granting Powell retroactive child support payments to the date of the Washington divorce decree is affirmed, and Powell's counsel is granted 2 weeks' leave to file an affidavit supporting Powell's motion for attorney fees.

AFFIRMED.

MILLER-LERMAN, J., not participating.