REQUESTED BY: Merlyn Carlson Director of Agriculture State of Nebraska
We are in receipt of your June 17, 1999 request for an opinion on LB 835, the Competitive Livestock Markets Act. In order to fulfill the Department of Agriculture's responsibilities under the Act, you seek guidance as to when certain provisions are to be implemented under the bill. Specifically, your office asked us to address when contract restrictions on packers begin, and how to enforce fee assessments for livestock being reported.
As you know, the Competitive Livestock Markets Act (hereinafter "the Act") was signed into law on May 26, 1999. Since an emergency existed, the bill became effective immediately, pursuant to Section 32. 1999 Neb. Laws LB 835, § 32. However, certain sections of the bill do not, according to their terms, become operative until February 15, 2000.
I. Immediate Reporting of Unfair Trade Practices by Packers
You first ask whether the Act's provisions, which prescribe packer violations if packers engage in discriminatory price activities, are immediately effective or become operative instead on February 15, 2000. Further, if these provisions are immediately effective, you inquire whether the Department of Agriculture (hereinafter "the Department") is charged with enforcement of these provisions immediately.
The first provisions that must be examined relate to prices and terms for purchase of livestock by packers. The relevant provisions are:
 Section 7. Except as provided in Sections 8 and 9 of this act, it is unlawful for a packer purchasing or entering into a contract to purchase swine to pay or enter into a contract to pay different prices to the sellers of the swine. This section shall not be construed to mean that a price or payment method must remain fixed throughout any marketing period.
. . . .
 Section 17. It is unlawful for a packer to enter into a contract to purchase cattle for slaughter if: (1) The contract specifies that the seller is not allowed to report the terms of the contract; or (2) The date of delivery of such cattle is not specified.
1999 Neb. Laws LB 835, §§ 7 17.
Section 7 of the Act has explicit exceptions, namely §§ 8 
9. The criteria for these exceptions could be fulfilled, in part, by a potential violator reporting the content of the contracts or cash prices paid. The reporting packer could thereby avoid violating the provision. Sections 8 and 9 specifically require swine price and term reporting to fulfill the exception, and to avoid violating the discrimination provision of Section 7. Section 13 of LB 835 provides that this reporting is not required to begin until February 15, 2000. Because the price discrimination restrictions and exceptions are intertwined with the price reporting requirement of Section 13, there is no workable statutory scheme until reports are filed beginning February 15, 2000.
It is a cardinal rule of statutory construction that "In construing a statute, an appellate court will, if possible, try to avoid a construction which would lead to absurd, unconscionable, or unjust results." State v. Alford, 6 Neb. App. 969, 975,578 N.W.2d 885, 890 (Neb.App. 1998). The drafter's intent in allowing exceptions to the discriminatory pricing provision, and the setting of a February 15, 2000 effective date for these exceptions to become operational, has the net result of no workable statutory scheme being possible until the reporting requirement begins. Hence, the operative date of Section 7 is February 15, 2000.
Similarly, Section 18 is a reporting exception to Section 17, allowing the potential violator to avoid the Section 17 penalty by reporting cattle contract contents. Much like Section 7, the discrimination provision in Section 17 may be cured by the potential violator reporting contract terms to the Department. Requiring compliance with Section 17 contract rules prior to term reporting actually beginning on February 15, 2000 would be inconsistent with the overall statutory scheme. Analysis of the entire language of the Act shows an intent to allow the potential violator of Section 17 to cure certain violations by reporting to the Department under Section 18. These reports to the Department are not required by Section 23 until February 15, 2000. Therefore, Section 17 cannot become operative until February 15, 2000.
The other provisions within the reporting requirements of §§ 7 to 26 must be read to be consistent to the above mentioned provisions and their exceptions. "A court will construe statutes relating to the same subject matter together so as to maintain a consistent and sensible scheme." FirsTier Bank, N.A. v.Department of Revenue, 254 Neb. 918, 925, 580 N.W.2d 537, 541
(1998). A nonsensible regulatory scheme would result if packers were bound by certain provisions immediately, while the exemptions from those provisions did not become operative until February 15, 2000. In short, the price restriction and contract term reporting provisions can only be read to begin February 15, 2000. To require that some provisions within §§ 7 to 26 be immediately enforceable, while some provisions are effectively tolled and unenforceable until February 15, 2000, would be an absurd result and an inconsistent reading of the Legislature's intent.
The legislative history and the plain language of the Act indicate that the Legislature did not intend that the contract restrictions in §§ 7 to 26 become operative until the affected packers are required to report price and contract terms on February 15, 2000. Committee Records on LB 835, 96th Neb. Leg., First Sess. 1-6 (Feb. 2, 1999); Floor Debate on LB 835, 96th Neb. Leg., First Sess. 4775 (March 23, 1999).
II. Due Date for Fees from Animal Sales
You next ask when the Department is required to begin assessing a two cent per-animal unit fee upon animal units reported under Section 27 of the Act. The bill does not provide a date upon which the Department is to begin assessing this animal unit fee, so Section 27 must be read in conjunction with the other sections of the statute. "With respect to statutory interpretation, the court will try to avoid [ ] an absurd, unconscionable, or unjust result. In so doing, the court must look to the statutory objective to be accomplished . . . ."Willers ex rel. Powell, 255 Neb. 769, 774, 587 N.W.2d 390, 394
(1998).
Section 27 reads: The department shall assess a fee not to exceed two cents per animal unit reported under sections 13 and 23 of this act as direct-purchased or contract-purchased. 1999 Neb. Laws LB 835, § 27. The phrase "per animal unit reported" includes a defined term, animal unit, and refers to a specific number of head of hogs or cattle. This number will be determined once animal units are reported. 1999 Neb. Laws LB 835, § 2. Therefore, accrual of the fee will not begin until after the required reporting of animal units begins on February 15, 2000. Since no animal units are required to be reported prior to that date, no fees could be levied prior to that time.
You next ask whether the Department may set a deadline for collection of those fees, since a date is not set to begin collecting fees under the statute, and what penalty can be enacted by the Department for non-payment? The Department is authorized to adopt and promulgate rules and regulations to carry out §§ 7 to 28 of LB 835 by Section 29. Since carrying out the requirements of Section 27 includes setting a reasonable due date for fees that have accrued from packers, the Department has the authority to set a date for payment so as to carry out legislative intent. "Where the Legislature has provided reasonable limitations and standards for carrying out delegated duties, there is no unconstitutional delegation of legislative authority." Ponderosa Ridge LLC v.Banner County, 250 Neb. 944, 951, 555 N.W.2d 151, 157 (1996). The Department has a duty to collect the fees, and preventing tardiness on the part of the packer is a reasonable extension of that duty. "The Legislature does have power to authorize an administrative or executive department to make rules and regulations to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law within designated limitations". Id. Consequently, we believe the Department can set a deadline for payment of fees.
Your last question is whether, in the event the Department does not receive the fees within a reasonable time period and the packer refuses to pay the accrued fees thereafter, the Department may charge a penalty for non-payment of fees by the packer? While the Department is authorized to adopt rules to enforce §§ 7 to 28 of LB 835, no penalty provision for non-payment of fees appears within the statute. "An administrative agency cannot use its rulemaking power to modify, alter, or enlarge provisions of a statute which it is charged with administering." Spencer by andthrough Spencer v. Omaha Public School Dist., 566 N.W.2d 759,252 Neb. 750, 753 (1997). While other parts of the bill appear to have penalty provisions, such as the civil fine for failure to report under §§ 25 and 15 of the Act, there is no mention of a penalty for failure to pay the accrued fees under § 27. Since no express penalties for non-payment is specified in that section, or in any other part of the statute, the Legislature did not authorize a penalty for late payment or non-payment of fees. Creating a penalty administratively would be beyond the Department's authority. Enforcement of the fee provisions would have to be achieved through other means such as obtaining a court order.
III. Conclusion
In conclusion, the contract restrictions in §§ 7 to 28 do not become operative until reporting requirements begin on February 15, 2000. The per animal unit fee cannot be imposed until the affected parties are required to begin reporting. A reasonable time period for payment of those fees may be established, but the Department is not authorized to levy a fine for late payment or non-payment of the fees.
Sincerely,
 DON STENBERG Attorney General
 William Russell Barger Assistant Attorney General
Approved by:
DON STENBERG 
Attorney General