IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


HEAVICAN V. BENES


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


ANDREW HEAVICAN, APPELLEE,

V.

JENNIFER BENES, APPELLANT.


Filed August 2, 2016.   No. A-15-1232.


Appeal from the District Court for Butler County: MARY C. GILBRIDE, Judge. Affirmed and remanded with directions.

Debra K. Lyford, P.C., L.L.O., for appellant.

Ryan J. Thomas for appellee.


INBODY, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

Andrew Heavican brought this action against Jennifer Benes to establish paternity and custody of Bryson Benes, Jennifer's minor son. Following a bench trial, the district court for Butler County determined that Andrew was Bryson's father and entered a journal entry addressing custody, parenting time, child support, and childcare expenses, among other issues. Jennifer appeals. Because our record does not contain all of the applicable worksheets, we remand the child support issue with directions. We affirm the remainder of the district court's journal entry.

BACKGROUND

Andrew and Jennifer, who never married, began living together in January or February 2013 and were still living together when Bryson was born in August. Jennifer and Bryson moved out of Andrew's home in mid-March 2014; the parties continued to work on their relationship, which ultimately ended in August.

- 1 -

On February 12, 2015, Andrew filed a complaint to establish paternity. In his complaint, Andrew sought temporary and permanent legal and physical custody of Bryson, subject to Jennifer's reasonable right to parenting time. He asked that Jennifer be ordered to pay child support and carry medical insurance for Bryson. Andrew asked the court to award him the tax exemption for Bryson. He also asked for a division of childcare costs and any of Bryson's medical expenses not covered by insurance.

After a hearing, the court filed its temporary order on April 10, 2015, wherein Jennifer was awarded temporary custody of Bryson; Andrew was awarded reasonable parenting time "including, without limitation," every other weekend from Friday at 6 p.m. to Saturday at 5 p.m., and every Wednesday evening from 5 to 8 p.m.; and Andrew was ordered to pay temporary child support in the amount of $422 per month, beginning on May 1.

Jennifer filed her answer and "cross-complaint" for custody and child support on April 14, 2015, after being granted leave to file out of time. In her "cross-complaint," Jennifer sought legal and physical custody of Bryson. She also asked the court to determine parenting time, child support, health insurance for the benefit of Bryson, payment of Bryson's medical expenses not covered by insurance, and the dependency exemption for Bryson. In his answer to Jennifer's "cross-complaint," Andrew asked the court to dismiss her "cross-complaint" and award attorney fees to him.

A pretrial order filed on May 12, 2015, notes that the parties reached a stipulation on paternity. The parties' attempt at mediation of the remaining issues failed and trial was held on July 31, 2015.

Andrew, age 32 at trial, testified as follows. After Jennifer and Bryson moved out of Andrew's home in mid-March 2014, Andrew and Jennifer tried to "work things out." Andrew saw Bryson approximately once a week. He said "[i]t was always tough to get a visit in. Sometimes it would take 3 to 5 days to get a visit, and it was usually pretty minimal." Visits always took place at Jennifer's house and she "would never allow" Andrew to take Bryson anywhere on his own. During their time together, Andrew and Bryson would play in Jennifer's living room and read books, and "sometimes" Jennifer would "let" Andrew feed Bryson. The parties ended their relationship in August 2014 and Andrew "decided to file for rights, 'cause [sic] it was getting extra difficult to get a visit in."

Andrew testified that he filed a paternity action in Lancaster County, Nebraska, in August 2014, but it was dismissed in December because he filed the action in the wrong county. In December, the parties decided to "try to work things out again" and got back together. The relationship "broke down" in late January 2015, and Andrew subsequently filed the current paternity action in Butler County, Nebraska. After he filed his paternity action in February, Andrew got to see Bryson at Jennifer's home once a week for about an hour; if he asked for more time, it had to be on her terms.

Once the temporary order was entered in April 2015, Andrew said he got more time with Bryson, including overnights, and they got to build a better bond between them. Andrew "stuck with the temporary orders" and never asked for more time. He testified that when Jennifer offered to let him have Bryson on Father's Day, he turned her down because Jennifer proposed a switch wherein Andrew would not get parenting time on Bryson's birthday. He never missed his parenting

time and was responsible for almost all of the transportation; whenever he asked Jennifer to transport Bryson, she told Andrew it was his obligation (the temporary order was silent as to transportation).

Andrew owns a home in Valparaiso, Nebraska; Bryson has his own bedroom and there is a backyard in which he can play. Andrew's parents live one block away from Andrew and his sister and brother-in-law live two blocks away; Andrew's grandmother also lives in Valparaiso. Andrew and Jennifer live nine miles apart.

Andrew acknowledged the parties had some difficulties with communication; for instance, before the temporary orders were put into place it "could be hours or a whole day" before Jennifer responded to Andrew's text message requesting a visit, and then it would sometimes take several days to get a visit (Andrew felt he was being ignored). Despite "tension" between the parties, Andrew testified that the parties can work together. He said that Jennifer is a good mother and he thinks it is important for Bryson to have both parents in his life. Andrew testified that joint custody would be in Bryson's best interest.

Andrew testified that he is a self-employed electrician. He stated that his gross income in 2014 was $55,000, but his net income was $10,000; he said he bought a lot of inventory to start his business. Andrew's 2014 tax return was received into evidence as exhibit 6.

Andrew's sister and mother both testified that Andrew is a good father and is very attentive to Bryson. Neither woman had concerns about Andrew's ability to care for his son.

Jennifer, age 31 at trial, testified as follows. She has always been Bryson's primary caregiver and wanted sole custody of Bryson. She said that she rearranged her schedule to be a "stay-at-home mom"; she worked part-time for her brother and was able to take Bryson to work with her. Jennifer said that when Bryson returns from parenting time with Andrew, he is often tired, hungry, "clingy," and less disciplined (throwing fits and saying "no" a lot).

Jennifer testified that she has had a difficult time communicating with Andrew. For example, Jennifer tried to talk to Andrew about Bryson being hungry and tired after visits, but Andrew did not always respond. The parties have also not been able to discuss simple matters about changing the parenting schedule, like when she offered to give him parenting time on Father's Day. Additionally, she told Andrew on more than one occasion that she thought Bryson had an allergic reaction to a certain brand of diapers, but he continued to put Bryson in that brand of diapers.

Jennifer testified that she has an associate's degree in massage therapy and was certified as a nursing assistant, but did not work in either of those professions at the time of trial. She was currently working part-time for her brother earning $10,000 per year, and she earned an additional $150 to $250 per week babysitting. She agreed that she had an earning capacity of at least minimum wage, and was capable of working 40 hours per week; for child support purposes she was willing to base her income on her 2014 earnings from a former job where she earned $17,300 (which at the time of the trial was more than minimum wage).

Jennifer testified that prior to the temporary support order, Andrew provided her with diapers, wipes, groceries, toys, $500 when she asked for help, and he paid a $280 electric bill for her.

Jennifer said she has a close relationship with her mother and four siblings, who all live within 25 miles of her. Her sister testified that she visited the parties monthly when they lived together, and during that time Jennifer was the one taking care of Bryson; Andrew was usually in a separate room or outside when she visited the home. Like everyone else, she said that Bryson is a healthy and happy child. Jennifer's sister also testified that after Bryson has parenting time with Andrew, Bryson is "somewhat violent," hitting and biting her children, but the behavior is short-lived.

The district court filed its journal entry on November 23, 2015, finding that Andrew is the father of Bryson. Finding that it was in Bryson's best interest, the district court awarded the parties joint legal and physical custody of Bryson, subject to the parenting plan authored by the court. The parenting plan essentially provided for 9/5 custody, with two 14-day periods. During the first 14-day period, Andrew has 9 days (not consecutive) and Jennifer has 5 days (consecutive). During the second 14-day period, Jennifer has 9 days (not consecutive) and Andrew has 5 days (consecutive). The parenting plan also established a holiday and summertime parenting schedule.

In its journal entry, the court used a joint custody calculation and ordered Andrew to pay child support in the amount of $50 per month, beginning December 1, 2015. The court also ordered: the parties to alternate claiming the tax exemption for Bryson; Andrew to maintain health insurance for Bryson so long as it is available to him at a reasonable cost through his employer; each party to pay one-half of Bryson's medical, dental, and vision expenses not covered by insurance; each party to pay the cost of any daycare necessary when the child is in his or her care; and each party to pay his or her own attorney fees and costs.

Jennifer timely filed this appeal.

## ASSIGNMENTS OF ERROR

Jennifer assigns, summarized and restated, that the district court erred in (1) ordering joint custody, (2) calculating Andrew's child support obligation, (3) failing to allocate a portion of her work-related childcare expenses to Andrew, (4) failing to allocate a portion of her prenatal expenses to Andrew, and (5) failing to award her attorney fees.

## STANDARD OF REVIEW

In filiation proceedings, on matters of custody, parenting time, and child support, an appellate court reviews a trial court's judgment de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of discretion. *Lancaster v. Brenneis*, 227 Neb. 371, 417 N.W.2d 767 (1988). Under this standard, an appellate court conducts its own appraisal of the record to determine whether the trial court's judgments are untenable such as to have denied justice. *Binder v. Binder*, 291 Neb. 255, 864 N.W.2d 689 (2015). Further, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Lancaster v. Brenneis, supra*.

An award of attorney fees in a paternity action is reviewed de novo on the record to determine whether there has been an abuse of discretion by the trial judge. Absent such an abuse, the award will be affirmed. *Cross v. Perreten*, 257 Neb. 776, 600 N.W.2d 780 (1999).

ANALYSIS

*Joint Custody*.

Jennifer asserts that the district court erred by awarding joint legal and physical custody and equal parenting time. Her main argument against joint custody is the parties' communication difficulties.

As we stated in *State on behalf of Maddox S. v. Matthew E.*, 23 Neb. App. 500, 516-17, 873 N.W.2d 208, 218 (2016):

> We acknowledge that courts typically do not award joint legal custody when the parties are unable to communicate effectively. See *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009) (joint decisionmaking by parents not in child's best interests when parents are unable to communicate face-to-face and there is a level of distrust); *Klimek v. Klimek*, 18 Neb. App. 82, 775 N.W.2d 444 (2009) (no abuse of discretion by district court's failure to award joint custody when minor child was confused by temporary joint legal and physical custody arrangement and parents had hard time communicating with one another). However, a trial court's decision to award joint legal or physical custody can be made without parental agreement or consent so long as it is in the child's best interests. Neb. Rev. Stat. § 42-364(3) (Cum. Supp. 2014) states: Custody of a minor child may be placed with both parents on a joint legal custody or joint physical custody basis, or both, (a) when both parents agree to such an arrangement in the parenting plan and the court determines that such an arrangement is in the best interests of the child or (b) if the court specifically finds, after a hearing in open court, that joint physical custody or joint legal custody, or both, is in the best interests of the minor child regardless of any parental agreement or consent. . . .

See Neb. Rev. Stat. § 43-2923 (Cum. Supp. 2014) (requirements for best interests of the child). See, also, *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004) (other pertinent factors for best interest). Furthermore,

> appellate courts review custody decisions for an abuse of discretion, and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). See, also, *Aguilar v. Schulte*, 22 Neb. App. 80, 848 N.W.2d 644 (2014). In affording such deference to the trial courts, appellate courts have in some instances declined to reverse trial court decisions where joint custody has been awarded or maintained even when the evidence demonstrates a lack of communication or cooperation between parents.

*State on behalf of Maddox S.*, 23 Neb. App. at 518, 873 N.W.2d at 219. We went on to discuss *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015) (despite parties' inability to communicate, joint legal custody decision left intact), and *Kay v. Ludwig*, 12 Neb. App. 868, 686 N.W.2d 619 (2004) (joint legal custody affirmed even though mother alleged nonexistent communication, confrontations, and harassing behavior by father). And in *State on behalf of Maddox S., supra*, we affirmed the joint legal custody decision because we gave deference to the

district court's attempt to find a workable solution to best protect the minor child's best interests. Because of the power struggle between the parties in that case, the district court was not willing to favor one parent over the other in allocating parental responsibilities or parenting time.

While *State on behalf of Maddox S., supra*, set forth cases allowing joint legal custody despite communication difficulties, we note that such difficulties likewise do not preclude an award of joint physical custody. See *Aguilar v. Schulte*, 22 Neb. App. 80, 848 N.W.2d 644 (2014) (award of joint physical custody not an abuse of discretion despite parties' imperfect communication).

In the present case, the evidence likewise supports not favoring one parent over the other in allocating parental responsibilities and parenting time. There were some communication issues between the parties, but nothing that cannot be overcome. The evidence shows that Jennifer and Andrew love Bryson and that he has a good relationship with both of them. Encouraging parents to move past the struggles intrinsic to custody disputes when the litigation is over by keeping both parents involved in making important decisions and making both parents share responsibilities in the manner set forth in the parenting plan in this case promotes a healthy co-parenting relationship. Both Jennifer and Andrew are fit, responsible, and loving parents. And the district court's decision to award joint legal and physical custody and equal parenting time was not an abuse of discretion.

*Child Support*.

Jennifer asserts that the district court erred in calculating Andrew's child support obligation. In its journal entry, the district court ordered Andrew to pay child support in the amount of $50 per month commencing December 1, 2015. We are unable to review this assigned error since all of the applicable child support worksheets are not contained in our record. Our record indicates that only Worksheet 3 (calculation for joint physical custody) was attached to the journal entry. Neither Worksheet 1 (basic net income and support calculation), nor worksheet 5 (deviations to child support guidelines), if needed, are included in our record. Without all of the applicable child support worksheets we do not know what income the court attributed to each party, nor can we determine whether the court's child support calculation was correct. Accordingly, we must remand this cause to the district court with directions to make part of its journal entry order, if previously completed, or otherwise complete, the applicable worksheets and provide evidence in the court order of the calculations used to determine child support. See *Rutherford v. Rutherford*, 277 Neb. 301, 308, 761 N.W.2d 922, 927 (2009) ("[T]he record on appeal from an order imposing or modifying child support shall include any applicable worksheets with the trial court's order. Failure to include such worksheets in the record will result in summary remand of the trial court's order."). We note that while *Rutherford* summarily remanded the trial court's order for failure to include applicable worksheets, child support was the only issue in that case. In the instant case, we only remand the order with respect to child support, as other issues, like custody, can and should be addressed at this juncture.

Jennifer also asserts that the district court erred in not ordering retroactive support commencing with the date of Bryson's birth. Andrew argues that Jennifer did not request retroactive child support in her "cross-complaint" and that the court "acted within its discretion to deny Jennifer retroactive support." Brief for appellee at 12. See, also, *Emery v. Moffett*, 269 Neb.

867, 697 N.W.2d 249 (2005) (whether a child support order should be retroactive is entrusted to the discretion of the trial court and will be affirmed absent an abuse of discretion).

Andrew is correct in that Jennifer did not specifically request retroactive child support in her "cross-complaint." However, she did request "a determination of child support in accordance with the Nebraska Child Support Guidelines" and she prayed "that the court make a determination as to the amount owing for child support for the benefit of the parties' minor child . . . and for such further relief as the Court deems just and equitable." Therefore, Jennifer's "cross-complaint" was sufficient for retroactive support purposes. See *Henke v. Guerrero*, 13 Neb. App. 337, 347, 692 N.W.2d 762, 774-75 (2005) (wife's paternity petition which prayed for "such other relief as may be allowed by law or equity" was sufficient for the trial court to award child support and retroactive support).

We note that in its journal entry, the district court was silent with respect to retroactive child support. "Generally, when a trial court clearly intends its order to serve as a final adjudication of the rights and liabilities of the parties, the order's silence on requests for relief can be construed as a denial of those requests." *Model Interiors v. 2566 Leavenworth, LLC*, 19 Neb. App. 56, 68, 809 N.W.2d 775, 785 (2011). However, there is a legislative intent to provide children born out of wedlock child support retroactively to the date of birth. *Willers v. Willers*, 255 Neb. 769, 587 N.W.2d 390 (1998). See, also, Neb. Rev. Stat. § 43-512.04 (Supp. 2015); Neb. Rev. Stat. § 43-1402 (Reissue 2008). On remand, the district court shall consider whether Jennifer should be awarded retroactive child support, and whether Andrew has the ability to pay such support. See *Emery v. Moffett, supra* (in the absence of a showing of bad faith, it is an abuse of discretion for a court to award retroactive child support when the evidence shows the obligated parent cannot pay retroactive support and still meet current obligations). Furthermore, if the court determines that retroactive support should be awarded, it will need to determine the date to which the support is retroactive; while support is normally retroactive to the date of the child's birth, the parties in this case lived together from the time of the child's birth in August 2013 until mid-March 2014 and were presumably sharing expenses during that time. Additionally, Jennifer testified that prior to the temporary support order, Andrew provided her with diapers, wipes, groceries, toys, $500 when she asked for help, and he paid a $280 electric bill for her.

*Childcare Expenses*.

Each parent was ordered to pay his or her own childcare expenses; presumably, given the equal amount of parenting time awarded, this should result in a fairly equal obligation for each parent with regard to such costs. However, Jennifer assigns as error that the district court abused its discretion in failing to allocate a portion of her work-related childcare expenses to Andrew. Her only argument in support of this assertion is that "[t]his needs to be reconsidered upon full custody being awarded to Jennifer and should be remanded for further hearing." Brief for appellant at 12. In light of our affirmance of the district court's award of joint physical custody to the parties, Jennifer's argument based on an award of "full custody" is moot. Furthermore, Jennifer, who works part-time for her brother and babysits, testified that she was able to take Bryson to work with her and was not incurring any childcare expense for him. Accordingly, the district court did

not abuse its discretion when it ordered each party to pay the cost of any childcare necessary when Bryson is in his or her care.

*Prenatal Expenses.*

Jennifer asserts that the district court erred in failing to allocate a portion of her prenatal expenses to Andrew. The district court's journal entry did not specifically mention prenatal expenses, and thus its silence can be construed as a denial of such expenses. See *Model Interiors v. 2566 Leavenworth, LLC, supra.*

Neb. Rev. Stat. § 43-1407 (Reissue 2008) provides:

> (1) The father of a child shall also be liable for the reasonable expenses of . . . (b) the mother of such child during the period of her pregnancy, confinement, and recovery. Such liability shall be determined and enforced in the same manner as the liability of the father for the support of the child.
>
> . . .
>
> (3) A civil proceeding to recover medical expenses pursuant to this section may be instituted within four years after the child's birth. . . .

"These expenses were once called lying-in expenses," and would be recoverable by Jennifer with the proper allegations and proof. *State on Behalf of Dunn v. Wiegand*, 2 Neb. App. 580, 585, 512 N.W.2d 419, 423 (1994).

Jennifer did not specifically request prenatal expenses in her "cross-complaint," nor did she provide sufficient evidence to support an award for such expenses. At trial, Jennifer testified that she paid $2,303 for prenatal care and asked that Andrew be made responsible for half of those costs; she did not offer any medical bills into evidence. Jennifer acknowledged that she never provided copies of her prenatal bills to Andrew, but claims she "showed it to him." Andrew testified that he had never been informed of the costs associated with Jennifer's prenatal care. The only evidence of prenatal expenses was Jennifer's testimony. Given the limited nature of the evidence, the district court did not abuse its discretion in denying Jennifer reimbursement for her prenatal expenses.

*Attorney Fees.*

Jennifer asserts that the district court erred in failing to award her attorney fees. Jennifer did not specifically request attorney fees in her "cross-complaint" or at trial, nor did she provide evidence of such fees. Accordingly, the district court did not abuse its discretion in ordering each party to pay their own attorney fees. *Cross v. Perreten*, 257 Neb. 776, 600 N.W.2d 780 (1999) (award of attorney fees in a paternity action is reviewed de novo on the record to determine whether there has been an abuse of discretion by the trial judge).

## CONCLUSION

Because our record does not contain the applicable worksheets, we remand the child support issue with directions, including consideration of retroactive child support. We affirm the remainder of the district court's journal entry.

AFFIRMED AND REMANDED WITH DIRECTIONS.