GARY E. MILLER, IN PERSON AND FOR ALL PERSONS SIMILARLY SITUATED, APPELLANT, V. CITY OF OMAHA, A MUNICIPAL CORPORATION, ET AL., APPELLEES.

573 N.W.2d 121

Filed January 23, 1998.   No. S-96-146.

M.H. Weinberg, of Weinberg & Weinberg, P.C., for appellant.

Kent N. Whinnery, Deputy Omaha City Attorney, and Jo A. Cavel for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

WRIGHT, J.

Gary E. Miller sued the City of Omaha (City), the City of Omaha Employees' Retirement System (COERS), and the State of Nebraska to obtain disability pension benefits for himself and a purported class of participants. Miller alleges that the class of participants includes himself and every former and/or current civilian member of COERS who is receiving a disability retirement pension, or may be entitled to receive the same in the future, and who is having or may have that disability pension entitlement reduced by either workers' compensation or Social Security, or both. Miller appeals from a summary judgment granted in favor of the defendants.

## I. SCOPE OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Dahlke v. John F. Zimmer Ins. Agency*, 252 Neb. 596, 567 N.W.2d 548 (1997).

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997).

## II. FACTS

On September 14, 1961, COERS implemented a pension program for the City's employees. COERS required mandatory employee contributions which approximately equaled the contributions made by the City. The City and the employees also provided equal Social Security contributions. Miller was hired by the City in July 1964 and was covered by COERS, Social Security, and Nebraska workers' compensation.

On March 27, 1987, Miller suffered a back injury on the job which resulted in permanent and total disability. He applied for

a service-connected disability pension from COERS on May 4, 1989, and was granted a disability pension effective June 22.

On or about March 19, 1990, the City and COERS reduced Miller's pension benefits by the amount of workers' compensation payments made to Miller. Subsequently, as a result of the receipt of Social Security benefits, the remainder of his pension benefits from COERS was eliminated, and currently, Miller receives no disability pension benefits from COERS.

At the time of Miller's initial employment, ordinance No. 22929, § 7.24.125 (the 1964 ordinance), was in effect. Section 7.24.125, entitled "Accidental disability pension —Injuries in line of duty," provided in part:

> Any member of the System who, while in the line of duty, has sustained or shall sustain injuries or sickness, arising out of the immediate or direct performance or discharge of his duty, which immediately or after a lapse of time permanently unfit him for active duty, shall receive a monthly accidental disability pension as long as he remains unfit for active duty equal to fifty percent of his average final monthly compensation, but, in no event, shall said disability pension exceed the sum of two hundred fifty dollars per month. In addition thereto, he shall be paid all medical, surgical and hospital expenses which may be incurred as a result of such sickness or injury but the pension and other benefits, being in excess of benefits under the Workmen's Compensation Act, shall be in lieu thereof.

For the period of March 1964 to June 1972, pursuant to the 1964 ordinance, the City paid an employee who was injured on the job periodic workers' compensation benefits and medical expenses until his service-connected disability pension was granted by COERS. Thereafter, to the extent that the pension benefits were in excess of the amount of periodic workers' compensation benefits required by the Nebraska Workers' Compensation Act, the City discontinued such periodic workers' compensation payments. COERS also paid the medical expenses after the awarding of a service-connected disability pension. COERS did not deduct from the pension award the amount of Social Security benefits received by the employee.

In 1972, ordinance No. 26389 (the 1972 ordinance) was passed. Section 7.24.125 was replaced by § 7.24.127 effective

June 20, 1972, through January 24, 1977. Section 7.24.127, entitled "Disability Retirement Pension," provided in part:

Any member of the system who has at least five (5) years of service credit and has sustained and/or shall sustain injuries or sickness, which immediately or after a lapse of time permanently unfit him for active duty, shall receive a monthly disability pension as long as he remains unfit for active duty or until he reaches age 65, whichever event occurs first. Such monthly disability pension shall be equal to sixty (60) per cent of his monthly compensation for the last full month prior to disability less other income benefits payable from Social Security. Such disability benefits shall commence six (6) months after the eligible member's disability began. Any member receiving a disability pension under the provisions of this Section shall upon the attainment of age 65 receive in lieu thereof a service retirement pension calculated in accordance with the provisions of 7.24.120 on the basis of average final compensation on the date of disability.

If it is medically demonstrated that the disability was sustained due to injuries or sickness arising out of the immediate or direct performance of a member's employment with the City of Omaha, the member shall be paid, in addition to the disability retirement pension, all medical, surgical, and hospital expenses incurred as a result of such sickness or injury, but the pension and other benefits, being in excess of benefits under Workmen's Compensation Act, shall be in lieu thereof.

For the period of June 20, 1972, through January 24, 1977, pursuant to the 1972 ordinance, the City paid an employee who was injured on the job periodic workers' compensation benefits and medical expenses until his service-connected disability pension was granted by COERS. Thereafter, to the extent that the pension benefits were in excess of the amount of the periodic workers' compensation benefits required by the act, the City discontinued such periodic workers' compensation payments. COERS also paid the employee's medical expenses after the awarding of a service-connected disability pension. COERS deducted from the pension award the amount of Social Security benefits received by the employee.

On January 25, 1977, § 7.24.127 was amended by ordinance No. 27936 (the 1977 ordinance), which remained in effect until April 18, 1989. The amendment provided that disability pension benefits would begin 5 months after the disability began, instead of 6 months, and that the City should pay any medical, surgical, and hospital expenses from its general fund. All other provisions of § 7.24.127, as well as the practices of the City in implementing the ordinance, remained the same.

On December 19, 1980, we decided *Novotny v. City of Omaha*, 207 Neb. 535, 299 N.W.2d 757 (1980). Novotny was disabled as a result of injuries sustained while in the performance of his job duties. The Workers' Compensation Court awarded Novotny $100 per week temporary total disability payments. For almost 2 years, Novotny received disability pension benefits in lieu of workers' compensation benefits. After his pension benefits terminated, the City commenced workers' compensation total disability payments of $100 per week. Novotny continued to receive such workers' compensation benefits until March 7, 1979, when the City began payments to Novotny of $889.54 per month under a disability and retirement pension plan. In ceasing to provide Novotny with workers' compensation benefits, the City relied on the provision in the pension ordinance which stated in part that " 'the pension and other benefits, being in excess of benefits under workmen's compensation act, shall be in lieu thereof.' " *Id.* at 536, 299 N.W.2d at 758.

In *Novotny*, we addressed whether the City was relieved of its statutory obligation to pay workers' compensation benefits when the pension plan provided that payment of disability pension benefits would be in lieu of workers' compensation benefits. We concluded that the payments under the pension plan did not affect the right of Novotny to benefits under the Nebraska Workers' Compensation Act.

For the period after our decision in *Novotny* through April 17, 1989, the City paid an employee who was injured on the job periodic workers' compensation benefits and medical expenses, and COERS paid the employee a service-connected disability pension. Although the City did not immediately amend the ordinance, COERS did not apply the "in lieu thereof" language, and

it did not deduct from the pension award the workers' compensation benefits received by the employee. COERS still deducted from the pension award the amount of Social Security benefits received by the employee.

On April 18, 1989, about 8½ years after our decision in *Novotny*, the 1977 ordinance was amended by ordinance No. 31771 (the 1989 ordinance). The "in lieu thereof" language was deleted, being replaced by the following:

> Such monthly disability pension in combination with workers' compensation and social security shall not exceed sixty (60) per cent of such member's base compensation for the last full month prior to disability. Such disability benefits shall commence immediately after the eligible member's disability shall have been approved by the board, with disability date having been set by the board upon approval of claim.

After April 18, 1989, the City paid an employee who was injured on the job periodic workers' compensation benefits and medical expenses, and COERS paid such employee a service-connected disability pension. COERS deducted from the pension award the workers' compensation benefits received by the employee from the City and the Social Security benefits received by the employee from the federal government. Miller was granted his disability pension under the 1989 ordinance.

Miller filed his suit on behalf of himself and every former and/or current civilian member of COERS who is receiving a disability retirement pension, or is entitled to or may be entitled to receive the same in the future, and who is having or may have that disability pension entitlement reduced by either workers' compensation or Social Security, or both. Miller sought a declaratory judgment to determine (1) to what extent COERS could reduce disability benefits by either workers' compensation benefits or Social Security benefits and (2) to what extent Miller and members of the class are entitled to an accounting and refund of the reductions, prejudgment interest, postjudgment interest, court costs, and attorney fees. Miller also requested punitive damages under 42 U.S.C. § 1983 (1994).

Miller's motions for partial summary judgment, requesting the court to find that any offset for workers' compensation payments received and/or any offset for Social Security benefits

from the pension entitlement were illegal and unconstitutional, were overruled. The court sustained the defendants' motion for summary judgment against Miller, dismissing Miller's second amended petition.

In its order with respect to Miller's first motion for partial summary judgment, the district court addressed the pension ordinance generally and stated that it was unable to find an impairment, but, instead, found a possible increase. In its final order, the court addressed Miller's contention that he was personally deprived of a vested right to receive $150 per month. The court again found that there was no showing that any change by the City would result in Miller's getting less than he would have received if he had retired prior to July 1972. The court explained that Miller never had any expectation that he would receive both workers' compensation and pension benefits until after our decision in *Novotny v. City of Omaha*, 207 Neb. 535, 299 N.W.2d 757 (1980), when the City began paying both. However, the court found that *Novotny* did not hold that an employee was entitled to both and that the fact that the City mistakenly paid both for approximately 8 years after *Novotny* did not create any right. The court concluded that the City may as a matter of law offset Social Security benefits against pension benefits.

Miller appeals the district court's judgment.

### III. ASSIGNMENTS OF ERROR

In summary, Miller claims the district court erred (1) in finding that the 1977 ordinance allowed the City to reduce disability pension benefits by workers' compensation payments; (2) in not finding that there was a substantial impairment in Miller's pension and the pensions of others when their pensions were reduced by workers' compensation payments; (3) in finding that there was an allowable reduction for 100 percent of the Social Security benefits, including those paid by the employee; (4) in allowing a reduction of disability pension benefits by Social Security and workers' compensation benefits; and (5) in overruling Miller's motions for summary judgment.

### IV. ANALYSIS

As a preliminary determination, we find that the action commenced by Miller does not constitute a class action and that the

action applies to Miller only. An action may not be maintained as a class action by a plaintiff on behalf of himself or herself and others unless he or she has the power as a member of the class to satisfy a judgment on behalf of all members of the class. *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994). As will be apparent from this opinion, a judgment involving Miller would not necessarily bind all members of the purported class.

### 1. IMPAIRMENT OF CONTRACT

Miller argues that the district court erred in failing to find that either the offset for Social Security or the offset for workers' compensation benefits constituted a substantial impairment of Miller's contract with the City. To determine whether the City unconstitutionally interfered with Miller's contractual rights, we engage in a three-part analysis. We must determine (1) whether there has been an impairment of the contract; (2) whether the City's actions, in fact, operated as a substantial impairment of the contractual relationship; and, if so, (3) whether that impairment was nonetheless a permissible, legitimate exercise of the City's sovereign powers. See *Calabro v. City of Omaha*, 247 Neb. 955, 531 N.W.2d 541 (1995).

Therefore, we first consider whether, at any point between the commencement of Miller's employment in 1964 and the time of his retirement in 1987, his contractual rights were impaired. In *Caruso v. City of Omaha*, 222 Neb. 257, 260, 383 N.W.2d 41, 44 (1986), we held that the word "impair," as used in the Contract Clause of the U.S. Constitution, requires no construction and may be given its ordinary meaning, which, according to the most basic dictionary definition, is " 'to make worse.' " We stated that not every change constitutes an impairment under the Constitution and that in order for there to be an impairment, the change must take away something and not work to the party's benefit. It is the burden of the employee to show that the situation has been made worse than that which existed when the employee's rights were created. *Caruso v. City of Omaha, supra.*

### (a) 1972 Ordinance

Miller asserts that the enactment of the 1972 ordinance constituted a substantial impairment of his contractual rights.

Miller argues that under the pre-1972 pension contract, he had a vested right to a minimum pension of $150 from COERS. He bases this assertion on the fact that under the 1964 ordinance, workers' compensation would not have been a collateral source because had he become disabled at that time, his pension would not have been greater than the workers' compensation benefits then payable. Additionally, there was no offset for Social Security. In contrast, when Miller retired in June 1989, his benefits received through workers' compensation and Social Security exceeded 60 percent of his base compensation for the last full month prior to disability, and as a result, Miller did not receive any disability pension benefits from COERS.

In *Calabro*, we held that a public employee's constitutionally protected right in his or her pension plan vests upon acceptance and commencement of employment, subject to reasonable or equitable unilateral changes by the Legislature. We recognized that the availability of and the security afforded by a pension plan may draw employees into government service. Thus, Miller had a constitutionally protected contractual right in the pension plan as it existed at the time of his employment. See *Calabro v. City of Omaha, supra.*

However, we do not agree with Miller's contention that the 1972 ordinance impaired his contractual rights which existed prior to that time. The Contract Clause of the federal Constitution does not prohibit changes in the contract. See *Caruso v. City of Omaha, supra.* Rather, the issue is whether Miller has been made worse off by the 1972 ordinance, and it is Miller's burden to prove that his situation is worse than that which existed when his rights were created. See *id.*

The 1964 ordinance guaranteed a monthly pension payment of 50 percent of the employee's average monthly compensation, with a cap of $250 per month. In addition, the employee would receive Social Security and medical expenses. If the employee's pension benefits were less than the employee's workers' compensation benefits, he or she would receive those also. Otherwise, if the pension benefits exceeded workers' compensation, they would be in lieu thereof.

The 1972 ordinance changed the disability pension plan by providing for a reduction of pension benefits by the amount of

Social Security the employee received. However, the pension plan also increased the amount of the pension benefits to 60 percent of the employee's monthly compensation, and there was no longer any cap on that amount. Otherwise, the plan remained the same.

We find no evidence from which it can be concluded that Miller was made worse off by the 1972 ordinance. There is evidence as to a change in the source of the funds, but Miller presents no evidence as to why he was made worse off. Having concluded that the 1972 ordinance did not worsen Miller's situation, we do not need to consider the extent of the impairment or whether it was permissible.

### (b) 1989 Ordinance

Miller asserts that the 1989 ordinance also constituted an impairment. His first argument in this regard appears to be that the retroactive application of our holding in *Novotny v. City of Omaha*, 207 Neb. 535, 299 N.W.2d 757 (1980), to the language of the previous ordinance nullifies the "in lieu thereof" language therein. As such, simply reading the ordinance with the "in lieu thereof" language deleted, Miller asserts that he had a vested right to full payment of his pension benefits plus workers' compensation without setoff and without regard to whether the pension benefits exceeded the workers' compensation benefits. Therefore, Miller claims that the 1989 ordinance impaired that right by allowing pension benefits to be reduced by workers' compensation so as to ensure only a combined sum of 60 percent of the employee's base compensation.

In making this argument, Miller misconstrues the nature of his constitutionally protected contractual right. In *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. 892, 320 N.W.2d 910 (1982), we indicated that what is protected is the settled or reasonable expectation of the employee, not the contract as might be written by the courts. What the Constitution protects are the expectations the employee relied upon to his or her detriment and to the benefit of the employer, who gains the employee's valuable services and loyalty. *Id.*

Prior to *Novotny*, Miller's expectation was that he would receive 60 percent of his monthly salary in pension benefits and medical expenses. That 60 percent would be reduced by Social

Security benefits received. If Miller's pension benefits exceeded his workers' compensation benefits, then the pension benefits would be in lieu thereof, and he would not receive workers' compensation. Otherwise, Miller would also receive workers' compensation.

The 1989 ordinance was similar, except that rather than providing that pension benefits would be in lieu of workers' compensation benefits, the ordinance provided that pension benefits would be reduced by the amount of workers' compensation benefits received. Thus, again, although there has been a change in the source of the funds, Miller makes no argument that the 1989 ordinance made him worse off than what he expected to receive prior to *Novotny*, and we find no evidence in support of such a contention.

Miller's second argument with regard to the 1989 ordinance appears to be that our holding in *Novotny* prohibits the offset of workers' compensation allowed by the 1989 ordinance. In addressing this argument, we point out that *Novotny* was limited to a determination that the workers' compensation statute prohibited workers from paying for their own workers' compensation benefits and prohibited the consideration of other benefits in making the workers' compensation payments. Here, workers' compensation is not being affected by the 1989 ordinance. Workers' compensation is being paid in accordance with the statute fully and without contribution by the employee. *Novotny* did not address the reduction of pension benefits by the amount of workers' compensation benefits paid.

Finally, Miller argues that the 1989 ordinance impaired vested contractual rights that were created by the City's 8-year practice after *Novotny* of allowing employees to receive both pension and workers' compensation benefits without any offset. After our decision in *Novotny*, the City did not immediately amend the ordinance. Instead, up until the passage of the 1989 ordinance, the City did not apply the "in lieu thereof" language and did not offset pension benefits by the amount of workers' compensation. The City continued to deduct the amount of Social Security benefits received from the pension award. Thus, the employee received both workers' compensation and pension benefits without any reduction in either because of the receipt

of the other. The 1989 ordinance changed this practice by providing that pension benefits would be set off against workers' compensation benefits received.

Where the employee's expectations concerning pension benefits are legitimately relied on in commencing or continuing employment, the pension benefits become part of a wage-and-fringe-benefit package. See *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. 892, 320 N.W.2d 910 (1982). A subsequent provision which violates those expectations will be unenforceable unless the state demonstrates a vital state interest in requiring a change in the benefits. See *id.*

In *Halpin*, we held that the apparently unwritten administrative policy of including lump-sum payments in the final salary calculation for retirement benefits can create a contractual right within the purview of the Contract Clause. Halpin was a member of the Nebraska State Patrol from 1947 through 1979. Beginning in 1969 and continuing until January 4, 1979, the retirement board calculated the final average monthly salary of a patrolman by including the payment received for unused vacation and sick leave. Commencing January 4, 1979, the board excluded the payment received for unused vacation and sick leave in calculating a patrolman's final average monthly salary.

We held that when the retirement board ceased including these lump-sum payments without an offsetting increase in benefits, there was an impairment of the employee's rights. The record contained testimony from employees stating that they had relied upon representations that their final average monthly salary would be computed by including the lump-sum leave payments they would receive at retirement. There was evidence that the employees relied on this advice and that it constituted an incentive to many of them to enter and remain in the service of the state patrol.

While an administrative practice can create a contractual right, a necessary element to the creation of such a right is that the employee has relied upon the practice or representation in deciding to commence or continue his or her employment. We therefore consider whether there is any evidence that Miller knew of and relied upon the City's practice after *Novotny v. City of Omaha*, 207 Neb. 535, 299 N.W.2d 757 (1980), of neither

offsetting pension benefits by workers' compensation benefits nor applying the "in lieu thereof" language so as to preclude payment of workers' compensation benefits when they were exceeded by the amount of pension benefits. Miller's affidavit submitted in support of his first motion for partial summary judgment stated:

[P]rior to the effective date of Ordinance 31771, based upon my understanding of the City Code, the law, and my employment agreement, I understood that should I become disabled in the course of employment with the City of Omaha that I would, as a result of the law, be entitled to a full service connected disability without reduction for workers' compensation and/or social security.

. . . I relied upon the receipt of my total disability pension without reduction for workmen's compensation or Social Security benefits as an integral portion of my total employment package which was bargained for by myself through the Nebraska Public Employees Local Union No. 251 and for which I had paid all my years of employment.

We conclude that a material question of fact exists as to whether Miller did or could have in fact relied upon the City's practice that should he become disabled in the course of his employment, he would be entitled for a full service-connected disability pension without reduction for workers' compensation. Although the affidavit also asserts that Miller relied upon the receipt of his pension benefits without reduction for Social Security benefits, we note that Miller does not make this assertion in his brief when discussing the City's practice. Additionally, the evidence is clear that during the time after *Novotny* through the 1989 ordinance, the City did, in fact, deduct Social Security benefits from the amount of pension benefits an employee was eligible to receive.

In reviewing an order granting a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences deducible from the evidence. *Tracy v. City of Deshler, ante* p. 170, 568 N.W.2d 903 (1997); *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997). The question on such review is not how a

factual issue is to be decided, but whether any real issue of material fact exists. *Vilcinskas v. Johnson*, 252 Neb. 292, 562 N.W.2d 57 (1997). The district court erred in granting summary judgment against Miller on the issue of whether the 1989 ordinance impaired his alleged expectation to receive pension benefits without an offset for workers' compensation benefits received.

## 2. Social Security Offset

Miller also assigns as error that "[t]he district court erred in finding that under the IRS rules applicable to the pension fund that there was an allowable reduction for 100 percent of the Social Security benefits including those paid for by the employee." In his brief, Miller argues that the City's act reducing pension benefits by 100 percent of the Social Security benefits was contrary to the applicable Internal Revenue Service (IRS) regulations. In particular, he contends that under Rev. Rul. 71-446, 1971-2 C.B. 187 at §§ 7 and 12, the maximum offset for Social Security is, at most, 64 percent.

Miller fails to assert how the pension plan's alleged conflict with an IRS revenue ruling is relevant to any cause of action or issue over which this court has jurisdiction. A generalized and vague assignment of error that does not advise this court of the issue submitted for decision will not be considered. *Meis v. Grammer*, 226 Neb. 360, 411 N.W.2d 355 (1987). We find Miller's assignment of error regarding the IRS rules and his accompanying argument to be overly vague, and thus, we are unable to address it.

## 3. Remaining Issues

Miller makes a brief reference to an action under 42 U.S.C. § 1983. Although a § 1983 claim was included in his petition, Miller does not on appeal argue that the claim should have succeeded. Therefore, we do not address it further.

Miller also argues that the 1972 and 1989 ordinances constituted a taking of his property without due process of law. However, Miller has failed to refer to his due process arguments in his assignments of error, and therefore, we do not address them. Errors which are argued but not assigned will not be considered by an appellate court. *Boettcher v. Balka*, 252 Neb. 547, 567 N.W.2d 95 (1997).

Finally, Miller asserts that summary judgment should not have been granted because there was a factual dispute as to whether Miller was ever a firefighter. Neither party disputes the fact that Miller was not a firefighter. In fact, Miller swore by affidavit that he was a civilian employee, and there is no evidence to the contrary. Accordingly, Miller's contention that there is a factual dispute as to whether he was a firefighter, thereby precluding summary judgment, is without merit.

## V. CONCLUSION

There is a material issue of fact regarding whether Miller relied upon the City's practice between 1980 and 1989 of neither applying the "in lieu thereof" language nor reducing pension benefits by the amount of workers' compensation, such that Miller's protected contractual rights were impaired. Miller claims that he relied upon receipt of his total disability pension without reduction for workers' compensation benefits as an integral portion of his total employment package. Therefore, the district court erred in granting summary judgment against Miller on this issue. We find no merit to any of Miller's other assignments of error.

We therefore reverse the summary judgment of the district court and remand the cause for further proceedings in accordance with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.