summary judgment in their favor. The district court's entry of summary judgment in favor of the appellees on this theory was not error.

## CONCLUSION

With respect to Brock's first cause of action, the district court determined that because Brock failed to show that he made a written claim for the tort of wrongful discharge in retaliation for filing his workers' compensation claim, his claim was barred under § 13-919(1) and entered summary judgment in favor of the appellees on this cause of action. With respect to Brock's second cause of action under § 1983, the district court determined that the appellees did not violate Brock's constitutional right to property, right to freedom of speech, or right to privacy and entered summary judgment in favor of the appellees on each of these three theories. Although our reasoning differs somewhat from that of the district court, we find no error in the entry of summary judgment in favor of the appellees on both causes of action, and, therefore, we affirm.

AFFIRMED.

───────────────

BIG JOHN'S BILLIARDS, INC., A NEBRASKA CORPORATION, APPELLEE
AND CROSS-APPELLANT, V. STATE OF NEBRASKA ET AL.,
APPELLANTS AND CROSS-APPELLEES, AND DOUGLAS
COUNTY HEALTH DEPARTMENT, APPELLEE.

___ N.W.2d ___

Filed August 29, 2014.    No. S-13-803.

1. **Constitutional Law: Statutes: Appeal and Error.** Whether a statute is constitutional presents a question of law, which the Nebraska Supreme Court resolve independently of the lower court's determination.
2. **Constitutional Law: Statutes: Presumptions.** A statute is presumed to be constitutional, and all reasonable doubts are resolved in favor of its constitutionality.
3. **Constitutional Law: Statutes: Proof.** The burden of establishing the unconstitutionality of a statute is on the one attacking its validity.
4. ____: ____: ____. The unconstitutionality of a statute must be clearly established before it will be declared void.

5. **Constitutional Law: Statutes: Legislature: Presumptions.** The Nebraska Legislature is presumed to have acted within its constitutional power despite that, in practice, its laws may result in some inequality.

6. **Special Legislation.** The focus of the prohibition against special legislation is the prevention of legislation which arbitrarily benefits or grants "special favors" to a specific class.

7. ____. A legislative act constitutes special legislation if (1) it creates an arbitrary and unreasonable method of classification or (2) it creates a permanently closed class.

8. **Constitutional Law: Statutes: Special Legislation.** When the Legislature confers privileges on a class arbitrarily selected from many who are standing in the same relation to the privileges, without reasonable distinction or substantial difference, then the statute in question has resulted in the kind of improper discrimination prohibited by the Nebraska Constitution.

9. **Special Legislation.** Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference. The question is always whether the things or persons classified by the act form by themselves a proper and legitimate class concerning the purpose of the act.

10. ____. A legislative body's distinctive treatment of a class is proper if the class has some reasonable distinction from other subjects of a like general character. And that distinction must bear some reasonable relation to the legitimate objectives and purposes of the legislative act.

11. ____. In order to determine if there is a "substantial difference of circumstances to suggest the expediency of diverse legislation" between the general class governed by a statute and the exempted class, it is necessary to examine both the purpose of the statute and the purpose behind the exemptions. The question is whether there is a difference in circumstances between the general class and the exempted class so as to justify treating one differently than the other, in light of the purpose of the act.

12. **Constitutional Law: Statutes.** The general rule is that when part of an act is held unconstitutional, the remainder must likewise fail, unless the unconstitutional portion is severable from the remaining portions.

13. **Statutes: Constitutional Law: Legislature: Intent: Appeal and Error.** To determine whether an unconstitutional portion of a statute may be severed, an appellate court considers (1) whether a workable statutory scheme remains without the unconstitutional portion, (2) whether valid portions of the statute can be enforced independently, (3) whether the invalid portion was the inducement to passage of the statute, (4) whether severing the invalid portion will do violence to the intent of the Legislature, and (5) whether the statute contains a declaration of severability indicating that the Legislature would have enacted the bill without the invalid portion.

14. **Constitutional Law: Contracts.** A three-part test is applied to determine whether a contract has been unconstitutionally interfered with. Pursuant to that test, a court must examine (1) whether there has been an impairment of the contract; (2) whether the governmental action, in fact, operated as a substantial impairment of the contractual relationship; and (3) whether the impairment

was nonetheless a permissible, legitimate exercise of the government's sovereign powers.

15. **Constitutional Law: Property.** Payment of just compensation pursuant to article I, § 21, of the Nebraska Constitution applies only to vested property rights.

16. **Constitutional Law: Property: Legislature.** The Legislature is free to create and abolish rights so long as no vested right is disturbed. The type of right that vests can be described generally as an interest which it is proper for the state to recognize and protect and of which the individual may not be deprived arbitrarily without injustice.

17. **Constitutional Law: Words and Phrases.** To be considered a vested right, the right must be fixed, settled, absolute, and not contingent upon anything.

18. **Constitutional Law: Property.** With respect to property, a right is considered to be vested if it involves an immediate fixed right of present or future enjoyment and an immediate right of present enjoyment, or a present fixed right of future enjoyment.

19. ____: ____. A vested right must be something more than a mere expectation based upon an anticipated continuance of the existing law; it must have become a title, legal or equitable, to the present or future enjoyment of property.

20. **Constitutional Law: Statutes: Intent: Presumptions.** A vested right can be created by statute. But it is presumed that a statutory scheme is not intended to create vested rights, and a party claiming otherwise must overcome that presumption.

Appeal from the District Court for Lancaster County: JODI NELSON, Judge. Affirmed in part, and in part reversed.

Jon Bruning, Attorney General, Dale A. Comer, Lynn A. Melson, and Natalee J. Hart for appellants.

Theodore R. Boecker, Jr., of Boecker Law, P.C., L.L.O., for appellee Big John's Billiards, Inc.

HEAVICAN, C.J., CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ., and PIRTLE, Judge.

STEPHAN, J.

The Nebraska Clean Indoor Air Act (the Act)[1] prohibits smoking in public places and places of employment but exempts certain facilities from that prohibition. In this action, we are asked to determine the constitutionality of three of these exemptions. We conclude that one exemption

[1] Neb. Rev. Stat. §§ 71-5716 to 71-5734 (Reissue 2009 & Cum. Supp. 2012).

is constitutional, but the remaining two are unconstitutional special legislation which are severable from the Act.

## I. BACKGROUND

In 2008,[2] the Nebraska Legislature amended the Act to make it "unlawful for any person to smoke in a place of employment or a public place."[3] The Act defines "[p]ublic place" as "an indoor area to which the public is invited or in which the public is permitted."[4] The Act specifically provides that "[a] private residence is not a public place."[5]

Three indoor areas were exempted from the smoking prohibition in the 2008 legislation:

> (1) Guestrooms and suites that are rented to guests and are designated as smoking rooms, except that not more than twenty percent of rooms rented to guests in an establishment may be designated as smoking rooms. All smoking rooms on the same floor shall be contiguous, and smoke from such rooms shall not infiltrate into areas where smoking is prohibited under the [Act];

> (2) Indoor areas used in connection with a research study on the health effects of smoking conducted in a scientific or analytical laboratory under state or federal law or at a college or university approved by the Coordinating Commission for Postsecondary Education; [and]

> (3) Tobacco retail outlets.[6]

As defined by the Act, a "[t]obacco retail outlet" is "a store that sells only tobacco and products directly related to tobacco. Products directly related to tobacco do not include alcohol, coffee, soft drinks, candy, groceries, or gasoline."[7]

In 2009,[8] the Legislature added a fourth exemption for "[c]igar bars," which are defined in the Act via reference to

---

[2] 2008 Neb. Laws, L.B. 395.

[3] § 71-5729.

[4] § 71-5726.

[5] *Id*.

[6] See, § 71-5730 (Cum. Supp. 2008); L.B. 395.

[7] § 71-5728.

[8] 2009 Neb. Laws, L.B. 355.

the Nebraska Liquor Control Act[9] as "an establishment operated by a holder of a Class C liquor license" which "[d]oes not sell food," "annually receives ten percent or more of its gross revenue from the sale of cigars" and related tobacco products other than cigarettes, "[h]as a walk-in humidor on the premises," and "[d]oes not permit the smoking of cigarettes."[10] A cigar bar may serve alcohol.[11]

Big John's Billiards, Inc. (Big John's), is a corporation which operates a billiards hall in Omaha, Nebraska. On May 20, 2009, Big John's filed an action in the district court for Lancaster County seeking a declaratory judgment that the Act was unconstitutional. As relevant here, Big John's asserted the Act was unconstitutional because it was special legislation, because it constituted a regulatory taking, and because it impaired its right to contract. The operative complaint named the State of Nebraska, two state agencies, two state officials, and the Douglas County Health Department as defendants. We refer to these parties collectively as "the State."

In September 2010, the district court held a hearing on summary judgment motions filed by both sides. The hearing was limited to Big John's claim that three exemptions from the Act violated the prohibition against special legislation set forth in Neb. Const. art. III, § 18. The district court concluded that the exemptions for guestrooms, tobacco retail outlets, and cigars bars were unconstitutional special legislation. In doing so, it reasoned that the record failed to show that there was a substantial difference in circumstances between those three exemptions and all public places and places of employment when considered in light of the purpose of the Act. However, it found that the exemptions were severable from the remaining provisions of the Act and that the Act therefore remained valid and enforceable.

---

[9] See Neb. Rev. Stat. §§ 53-101 to 53-1,122 (Reissue 2010, Cum. Supp. 2012 & Supp. 2013).

[10] §§ 71-5730(4) (Reissue 2009) and 53-103.08.

[11] See *id*.

The State appealed to this court.[12] We determined we lacked jurisdiction because not all of the claims asserted below had been resolved.[13] On September 12, 2013, the district court resolved the remaining claims in favor of the State. The State then filed this timely appeal, and Big John's cross-appealed.

## II. ASSIGNMENTS OF ERROR

The State assigns that the district court erred in (1) misapplying the special legislation test and (2) determining the statutory exemptions for hotel guestrooms, tobacco retail outlets, and cigar bars were unconstitutional special legislation.

In its cross-appeal, Big John's assigns that the district court erred in (1) concluding the Act should not be invalidated but merely should be subject to a severing of the unconstitutional exemptions; (2) concluding the Act did not constitute an impairment of its contractual rights, in violation of article I, § 16, of the Nebraska Constitution; and (3) concluding the Act did not constitute an unconstitutional regulatory taking in violation of article I, § 21, of the Nebraska Constitution.

## III. STANDARD OF REVIEW

[1] Whether a statute is constitutional presents a question of law, which we resolve independently of the lower court's determination.[14]

## IV. ANALYSIS

[2-5] Our independent resolution of the issues presented by this appeal is governed by familiar principles applicable to constitutional challenges to state statutes. A statute is presumed to be constitutional, and all reasonable doubts are resolved in favor of its constitutionality.[15] The burden of

---

[12] *Big John's Billiards v. State*, 283 Neb. 496, 811 N.W.2d 205 (2012).

[13] *Id*.

[14] *In re Interest of A.M.*, 281 Neb. 482, 797 N.W.2d 233 (2011).

[15] *Connelly v. City of Omaha*, 284 Neb. 131, 816 N.W.2d 742 (2012); *Sarpy Cty. Farm Bureau v. Learning Community*, 283 Neb. 212, 808 N.W.2d 598 (2012).

establishing the unconstitutionality of a statute is on the one attacking its validity.[16] The unconstitutionality of a statute must be clearly established before it will be declared void.[17] The Nebraska Legislature is presumed to have acted within its constitutional power despite that, in practice, its laws may result in some inequality.[18]

## 1. Special Legislation

[6,7] The enactment of special legislation is prohibited by Neb. Const. art. III, § 18, which provides in relevant part:

> The Legislature shall not pass local or special laws in any of the following cases, that is to say:
> . . . .
> Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever . . . . In all other cases where a general law can be made applicable, no special law shall be enacted.

The focus of the prohibition against special legislation is the prevention of legislation which arbitrarily benefits or grants "special favors" to a specific class.[19] A legislative act constitutes special legislation if (1) it creates an arbitrary and unreasonable method of classification or (2) it creates a permanently closed class.[20] It is undisputed that there is not a permanently closed class at issue in this case, and thus our focus is on whether there is an arbitrary and unreasonable classification.

[8-10] When the Legislature confers privileges on a class arbitrarily selected from many who are standing in the same relation to the privileges, without reasonable distinction or substantial difference, then the statute in question has resulted

---

[16] *Id.*

[17] *Id.*

[18] *Connelly, supra* note 15; *Staley v. City of Omaha*, 271 Neb. 543, 713 N.W.2d 457 (2006).

[19] *In re Interest of A.M., supra* note 14.

[20] *D-CO, Inc. v. City of La Vista*, 285 Neb. 676, 829 N.W.2d 105 (2013); *In re Interest of A.M., supra* note 14; *Hug v. City of Omaha*, 275 Neb. 820, 749 N.W.2d 884 (2008).

in the kind of improper discrimination prohibited by the Nebraska Constitution.[21] Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference.[22] The question is always whether the things or persons classified by the act form by themselves a proper and legitimate class concerning the purpose of the act.[23] A legislative body's distinctive treatment of a class is proper if the class has some reasonable distinction from other subjects of a like general character.[24] And that distinction must bear some reasonable relation to the legitimate objectives and purposes of the legislative act.[25]

We have addressed special legislation issues on numerous occasions. In one case, *Hug v. City of Omaha*,[26] we examined an issue very similar to that presented here. *Hug* involved a challenge to exemptions to an Omaha ordinance imposing a smoking ban throughout the city. In analyzing the special legislation claim with respect to these exemptions, we focused on the city council's purpose in creating the class and examined whether there was a substantial difference of circumstances to suggest the expediency of diverse legislation. We noted that in determining whether the exemptions to a city ordinance prohibiting smoking in most public places and places of employment constituted special legislation, it was necessary to focus "on the City's purpose behind exempting certain entities and decide whether there is a substantial difference of circumstances between exempted and nonexempted facilities which would suggest the expediency of diverse legislation."[27]

*Hug* noted that in comparing exempted and nonexempted facilities, it was necessary to examine the stated purpose of the ordinance, which was "the prohibition of smoking in

---

[21] *In re Interest of A.M.*, *supra* note 14; *Hug, supra* note 20.

[22] *Id.*

[23] *D-CO, Inc.*, *supra* note 20.

[24] *Id.*; *In re Interest of A.M.*, *supra* note 14.

[25] *Id.*

[26] *Hug, supra* note 20.

[27] *Id.* at 827, 749 N.W.2d at 890.

public gathering places and in places of employment in order to protect the public health and welfare and to guarantee the right to breathe smoke-free air."[28] In finding exemptions for stand-alone bars, keno establishments, and horseracing simulcast locations were invalid special legislation, we reasoned: "Nothing in the ordinance's stated purpose would explain why employees of the exempted facilities or members of the public who wish to patronize those establishments are not entitled to breathe smoke-free air or to have their health and welfare protected."[29] We also noted that the city had not offered any evidence to support making such a distinction. Thus, we determined that on the record, there was no "'substantial difference of circumstances to suggest the expediency of diverse legislation.'"[30] We specifically noted, however, that we were not holding that "similar exemptions could not be constitutionally justified."[31]

(a) Special Legislation Test

The parties disagree as to how the special legislation analysis is to be applied when exemptions to a statute are alleged to constitute special legislation. The district court found, and Big John's agrees, that whether the exemptions are special legislation should be examined in light of the purpose of the entire Act. The State, on the other hand, argues that whether the exemptions are special legislation should be determined solely from the purpose of the exemptions themselves.

[11] Both sides are partially correct. In order to determine if there is a "substantial difference of circumstances to suggest the expediency of diverse legislation"[32] between the general class governed by a statute and the exempted class, it is necessary to examine *both* the purpose of the statute and

---

[28] *Id.*

[29] *Id.*

[30] *Id.* at 827, 749 N.W.2d at 890-91, quoting *Le v. Lautrup*, 271 Neb. 931, 716 N.W.2d 713 (2006).

[31] *Id.* at 827, 749 N.W.2d at 891.

[32] *Id.* at 826, 749 N.W.2d at 890.

the purpose behind the exemptions. The question is whether there is a difference in circumstances between the general class and the exempted class so as to justify treating one differently than the other, in light of the purpose of the Act. We explained this premise in *Gourley v. Nebraska Methodist Health Sys.*[33]:

> "'Classification is proper if the special class has some reasonable distinction from other subjects of a like general character, which distinction bears some reasonable relation to the legitimate objectives and purposes of the legislation. The question is always whether the things or persons classified by the act form by themselves a proper and legitimate class with reference to the purpose of the act.'"

### (i) Purpose of the Act

According to § 71-5717, the purpose of the Act is "to protect the public health and welfare by prohibiting smoking in public places and places of employment." The Legislative history makes it clear that the impetus for the Act was the Legislature's concern about the negative health effects of secondhand smoke.[34]

The district court concluded that the Act's purpose was "to protect the public health and welfare by prohibiting smoking in public places and places of employment and thereby protect employees and the public from the hazards of secondhand smoke." We view the purpose as slightly broader. Based on the language of § 71-5717 and the legislative history, the purpose of the Act is to protect the public health and welfare by protecting employees and the public from the hazards of secondhand smoke. The means the Legislature chose to accomplish this purpose was by prohibiting smoking in all "public places and places of employment."[35] Thus, the purpose was not to

---

[33] *Gourley v. Nebraska Methodist Health Sys.*, 265 Neb. 918, 938-39, 663 N.W.2d 43, 65 (2003).

[34] See, e.g., Introducer's Statement of Intent, L.B. 395, Health and Human Services Committee, 100th Leg., 1st Sess. (Feb. 1, 2007).

[35] § 71-5717.

prohibit smoking, but, rather, to provide protection from the hazards of secondhand smoke.

### (ii) Guestrooms

Guestrooms and suites that are rented to guests and designated as smoking rooms are exempt from the smoking ban.[36] This exemption was part of the bill when it was originally introduced and was the subject of almost no legislative debate. The legislative history indicates, however, that the exemption was included in the bill because hotels are similar to apartments or private residences[37] in which the Act does not prohibit smoking.[38]

The district court essentially reasoned that even if guestrooms are akin to private residences and thus there is a reason to classify them as something other than "public places," they remain "places of employment" and there is no substantial difference in circumstances between them and other places of employment regulated by the Act. But the legislative history shows that the issue of employees being exposed to secondhand smoke in private residences was considered by the Legislature,[39] and ultimately it concluded that a private residence is a place of employment only when it is being used "as a licensed child care program and one or more children who are not occupants of such residence are present."[40]

We have noted that "when the Legislature seeks to inaugurate reforms in the area of economics or social welfare, it need not choose between attacking every aspect of the problem or not attacking the problem at all."[41] Arguably, secondhand smoke is equally harmful whether it is encountered in a private

---

[36] § 71-5730(1).

[37] See Health and Human Services Committee Hearing, L.B. 395, 100th Leg., 1st Sess. 73 (Feb. 1, 2007).

[38] § 71-5726.

[39] See Floor Debate, L.B. 395, 100th Leg., 1st Sess. 6, 15, 28-29 (Feb. 13, 2007).

[40] § 71-5724.

[41] *Bergan Mercy Health Sys. v. Haven*, 260 Neb. 846, 856, 620 N.W.2d 339, 347 (2000).

residence or a public place, but the Legislature chose not to prohibit smoking in private residences except those used for conducting a licensed childcare program. That was a legitimate policy decision. Likewise, there is a logical basis for the Legislature to conclude that guestrooms are akin to private residences, and thus there is a substantial difference in circumstances between guestrooms and other public places and places of employment. Based upon our independent review of the record, we conclude that the evidence does not overcome the presumption of constitutionality with respect to the exemption for guestrooms and suites. This exemption does not constitute special legislation.

### (iii) Tobacco Retail Outlets

The exemption for tobacco retail outlets was not part of the bill when it was originally introduced. Instead, it was proposed by committee amendment.[42] One senator stated the exemption was added because it was "reasonable that a business that deals in nothing but tobacco products be able to allow smoking within their facility"[43] and that it made "sense to let people try out the wares in the smoke shop."[44] In addition, the owner of a tobacco shop testified during the committee hearing that ideally, customers would be able to sample his products before purchasing, "like going to the supermarket to sample various foods that [it] offer[s]."[45] There was no testimony or discussion about whether such sampling is necessary to the operation of a tobacco retail outlet or why any such sampling had to occur indoors, as opposed to outdoors.

We conclude that there is no difference in circumstances between tobacco retail outlets and all other public places and places of employment so as to justify the expediency of diverse legislation and that the exemption in § 71-5730(3) is

---

[42] See Floor Debate, Amend. 276, L.B. 395, 100th Leg., 1st Sess. 20-22 (Mar. 5, 2007).

[43] Id. at 20.

[44] Id. at 23.

[45] Health and Human Services Committee Hearing, L.B. 395, 100th Leg., 1st Sess. 66 (Feb. 1, 2007).

therefore unconstitutional special legislation. The mere fact that tobacco retail outlets sell only tobacco products does not distinguish them in any substantial way from other public places or places of employment. And allowing patrons of such shops to smoke simply because it is convenient does not comport with the purpose of the Act, which is to protect the public and employees from the dangers of secondhand smoke.

### (iv) Cigar Bars

The exemption for cigar bars was not part of the Act as it was originally enacted. Instead, it was enacted by subsequent legislation in 2009.[46] The Introducer's Statement of Intent on the proposed bill specifically stated that the purpose of the exemption was "to provide protection for businesses currently operating in the state as 'cigar bars.'"[47] During debate, the senator who introduced the bill argued that cigar bars should be exempt from the Act because they existed for the purpose of allowing smoking.[48]

There is no substantial difference in circumstances between cigar bars and other public places or places of employment that justifies treating cigars bars differently. Indeed, the exemption is directly contrary to the purpose of the Act, which is to protect the public health by limiting exposure to secondhand smoke. The exemption in § 71-5730(4) for cigar bars is unconstitutional special legislation.

### (b) Severability

The district court found that the unconstitutional exemptions were severable from the other provisions of the Act and that the Act separated from these exemptions was valid and enforceable. Big John's challenges this finding in its cross-appeal.

---

[46] See L.B. 355.

[47] Introducer's Statement of Intent, L.B. 355, General Affairs Committee, 101st Leg., 1st Sess. (Feb. 9, 2009).

[48] General Affairs Committee Hearing, L.B. 355, 101st Leg., 1st Sess. 50-51 (Feb. 9, 2009), and Floor Debate, 101st Leg., 1st Sess. 20-21 (Mar. 20, 2009).

At the outset, we note that the cigar bar exemption was enacted after the other exemptions, and in legislation that was separate from the rest of the Act. Because that exemption was not part of the original enactment, we need not engage in a severability analysis as to it. Our analysis is therefore limited to whether the Act remains valid and enforceable if the tobacco retail outlet exemption is severed from it.

[12,13] The general rule is that when part of an act is held unconstitutional, the remainder must likewise fail, unless the unconstitutional portion is severable from the remaining portions.[49] To determine whether an unconstitutional portion of a statute may be severed, an appellate court considers (1) whether a workable statutory scheme remains without the unconstitutional portion, (2) whether valid portions of the statute can be enforced independently, (3) whether the invalid portion was the inducement to passage of the statute, (4) whether severing the invalid portion will do violence to the intent of the Legislature, and (5) whether the statute contains a declaration of severability indicating that the Legislature would have enacted the bill without the invalid portion.[50]

Big John's contests only the district court's finding that the exemptions were not the inducement to passage of the entire Act. It relies on language from a 1935 decision of this court, stating:

> "One of the tests used to determine whether a statute is or is not severable so that a portion may be rejected is that it ought not to be held wholly void unless the invalid portion is so important to the general plan and operation of the law in its entirety as reasonably to lead to the conclusion that it would not have been adopted if the legislature had perceived the invalidity of the part so held to be unconstitutional; but where the valid and the invalid parts are so bound together that the invalid part is a material inducement to the valid portion, the whole is invalid. This test is merely a means of ascertaining

---

[49] *State ex rel. Bruning v. Gale*, 284 Neb. 257, 817 N.W.2d 768 (2012).

[50] *Id.*; *State ex rel. Stenberg v. Omaha Expo. & Racing*, 263 Neb. 991, 644 N.W.2d 563 (2002).

and carrying out the presumed intention of the legislature. If it appears that the invalid portion was designed as an inducement to pass the valid, the inference is that the legislature would not have passed the valid portion alone."[51]

Essentially, Big John's argues that the legislative history shows the introducer did not have the votes to pass the Act without the exemptions and that therefore, the exemptions were an inducement to the passage of the Act.

The legislative history certainly shows that some compromise was necessary to pass L.B. 395. But compromise is an inherent part of the lawmaking process. Nothing in the legislative history demonstrates or even implies that the tobacco retail outlet exemption was critical to passage of the entire bill. And in any event, the inducement test, properly understood, asks, "Did the Legislature intend to pass the bill only as it existed with the unconstitutional exemptions?" and not "Was the Legislature able to pass the bill only because it contained the unconstitutional exemptions?" As the district court reasoned, to hold otherwise would mean that any time Legislative compromise was necessary, that compromise was an inducement that prevents unconstitutional portions of an act from being severed. And the Legislative history certainly does not demonstrate that the Legislature intended to enact the Act if, and only if, the exemption for tobacco retail outlets was included.

Further, we consider all five factors when determining whether unconstitutional provisions of a statute can be severed from it. Here, the Act is workable and its valid portions can be enforced without the exemption for tobacco retail outlets. Severing the exemption would not do violence to the Legislature's intent of protecting the public health and welfare by limiting exposure to secondhand smoke. And, finally, the Legislature expressly declared its willingness to enact the bill absent the invalid portion, as L.B. 395, § 21, contained a severability provision stating, "If any section in this act or

---

[51] *State, ex rel. Taylor, v. Hall*, 129 Neb. 669, 691-92, 262 N.W. 835, 846 (1935), quoting 6 R.C.L. *Constitutional Law* § 123 (1915).

any part of any section is declared invalid or unconstitutional, the declaration shall not affect the validity or constitutionality of the remaining portions." We agree with the district court that the Act is valid and enforceable without the unconstitutional exemptions.

## 2. Impairment of Contract

Big John's also argues the Act violates article I, § 16, of the Nebraska Constitution because it impairs the obligations of the lease agreement Big John's entered into with its landlord. The lease was entered into prior to the smoking ban imposed by the Act.

[14] Article I, § 16, provides, "No . . . law impairing the obligation of contracts . . . shall be passed." A three-part test is applied to determine whether a contract has been unconstitutionally interfered with.[52] Pursuant to that test, a court must examine (1) whether there has been an impairment of the contract; (2) whether the governmental action, in fact, operated as a substantial impairment of the contractual relationship; and (3) whether the impairment was nonetheless a permissible, legitimate exercise of the government's sovereign powers.[53]

The district court found Big John's allegations failed all three prongs of this test. Because failure to meet the first prong necessarily means that the test fails, we need go no further than that if we find the contract was not impaired as a matter of law.[54]

Big John's asserts that it relied on revenues generated from smoking customers when it entered into the lease agreement, that its revenues decreased due to the smoking ban imposed by the Act, and that this decrease in revenue impaired its ability to make payments on its lease and continue its operations. Even assuming these facts are true, the Act did not impair Big John's obligations on its contract. The Act did not alter the terms of Big John's lease in any way or make any term

---

[52] See, *Lamar Co. v. City of Fremont*, 278 Neb. 485, 771 N.W.2d 894 (2009); *Miller v. City of Omaha*, 253 Neb. 798, 573 N.W.2d 121 (1998).

[53] See *id.*

[54] See *id.*

of that lease invalid or unenforceable.[55] Instead, any effect the Act has on Big John's revenue is completely incidental and not related to the lease agreement between Big John's and the landlord. There is no unconstitutional impairment of the contract as a matter of law.

### 3. Regulatory Taking

Big John's also argues that the Act amounts to a regulatory taking because it damages its property rights without granting compensation. Article I, § 21, of the Nebraska Constitution provides: "The property of no person shall be taken or damaged for public use without just compensation therefor."

[15] Payment of just compensation pursuant to article I, § 21, applies only to vested property rights.[56] Big John's claims that its vested right was "its ability to operate a premises that allowed smoking"[57] and that the Act took away this vested right without compensating it.

[16-20] The Legislature is free to create and abolish rights so long as no vested right is disturbed.[58] The type of right that "'vests'" can be described generally as "'an interest which it is proper for the state to recognize and protect and of which the individual may not be deprived arbitrarily without injustice.'"[59] To be considered a vested right, the right must be "'fixed, settled, absolute, and not contingent upon anything.'"[60] With respect to property, a right is considered to be "'vested'" if it involves "'an immediate fixed right of present or future enjoyment and an immediate right of present enjoyment, or a present fixed right of future enjoyment.'"[61] A vested right "'must be

---

[55] See *Lincoln Federal Labor Union v. Northwestern Iron and Metal Co.*, 149 Neb. 507, 31 N.W. 2d 477 (1948).

[56] *Tracy v. City of Deshler*, 253 Neb. 170, 568 N.W.2d 903 (1997).

[57] Brief for appellee on cross-appeal at 45.

[58] *United States Cold Storage v. City of La Vista*, 285 Neb. 579, 831 N.W.2d 23 (2013).

[59] *Id.* at 592, 831 N.W.2d at 33, quoting 16B Am. Jur. 2d *Constitutional Law* § 746 (2009).

[60] *Id.*

[61] *Id.*

something more than a mere expectation based upon an antici-
pated continuance of the existing law; it must have become a
title, legal or equitable, to the present or future enjoyment of
property.'"[62] A vested right can be created by statute.[63] But it
is presumed that a statutory scheme is not intended to create
vested rights, and a party claiming otherwise must overcome
that presumption.[64]

Simply stated, there is no vested right at issue here. The only
"right" Big John's had to allow its customers to smoke was
created by statute—the prior version of the Act, under which
smoking in billiards parlors was regulated but not prohibited.
That Act created nothing more than a mere expectation based
upon continuance of the existing law and did not create a
vested right. There was no regulatory taking here as a matter
of law.

## V. CONCLUSION

There is a difference in circumstances between guestrooms
and other public places which justified diverse legislation,
because guestrooms are akin to private residences. We there-
fore conclude that the exemption for guestrooms is not special
legislation. We agree with the district court, albeit for some-
what different reasons, that the exemptions for tobacco retail
outlets and cigar bars are unconstitutional special legislation.
The Act is valid and enforceable when the unconstitutional
exemptions are severed from it. The Act is not an unconsti-
tutional impairment of contract or an unconstitutional regula-
tory taking.

AFFIRMED IN PART, AND IN PART REVERSED.

WRIGHT, J., not participating.

---

[62] *Id*., quoting 16B Am. Jur. 2d, *supra* note 59, § 748.

[63] *United States Cold Storage, supra* note 58.

[64] *Id*.

CASSEL, J., dissenting in part.

I respectfully dissent from the part of the majority opinion
holding the exemption for tobacco retail outlets to be uncon-
stitutional as special legislation. Although the majority recites

the correct standard of review, the court fails to heed it. A statute is presumed to be constitutional, and all reasonable doubts are resolved in favor of its constitutionality.[1] As to the tobacco retail outlets exemption, the majority fails to discern the reasonable doubt that seems so plain to me.

In every other respect, the majority opinion strikes the right note. It recites the correct law. It correctly resolves the parties' dispute over how the court should examine the legislation. And it reaches the correct results regarding the exemptions for guestrooms and cigar bars. Thus, I focus on the single issue where I part company with the majority—the exemption for tobacco retail outlets.

If, in the light of common sense, the statutory text reveals a reasonable doubt whether there is a substantial difference in circumstances between a tobacco retail outlet and other public places and places of employment, our precedent mandates that we defer to the Legislature. Because that reasonable doubt clearly exists, I would uphold the exemption.

The majority articulates the purpose of the Nebraska Clean Indoor Air Act (the Act)[2] as "to protect the public health and welfare by protecting employees and the public from the hazards of secondhand smoke." And I agree with this articulation.

But tobacco retail outlets, as defined by the Act, have several unique and substantial circumstances which inherently distinguish these outlets from other public places and places of employment. First, the product being sold necessarily produces the smoke that the Act is generally attempting to eliminate. Second, a tobacco retail outlet's purpose is to promote "firsthand" exposure to tobacco smoke. Finally, the exemption's prohibition on sales of other products demonstrates the Legislature's intent to limit the size and number of businesses qualifying for the exemption.

---

[1] *Connelly v. City of Omaha*, 284 Neb. 131, 816 N.W.2d 742 (2012); *Sarpy Cty. Farm Bureau v. Learning Community*, 283 Neb. 212, 808 N.W.2d 598 (2012).

[2] Neb. Rev. Stat. §§ 71-5716 to 71-5734 (Reissue 2009 & Cum. Supp. 2012).

As the majority observes, under the Act, a tobacco retail outlet sells only tobacco and products directly related to tobacco.[3] And such products do not include alcohol, coffee, soft drinks, candy, groceries, or gasoline.[4] Thus, members of the public who enter tobacco retail outlets necessarily do so for the sole purpose of purchasing tobacco or products directly related to tobacco.

These patrons have already chosen to expose themselves to the risks of firsthand smoke. The Legislature could rationally determine that the dangers of secondhand smoke are insignificant in comparison to the risk these patrons already encounter firsthand. The exemption for tobacco retail outlets is distinguishable from the exemptions this court found to be unconstitutional special legislation in *Hug v. City of Omaha*.[5] Unlike stand-alone bars, keno establishments, and horseracing simulcast locations (and cigar bars in the present case), there is no rationale for a patron to enter a tobacco retail outlet other than to facilitate his or her access to firsthand smoke. Such public places do not sell alcohol or offer other forms of entertainment. They exist solely to facilitate patrons' access to tobacco and its related risks. Thus, the purpose of the Act in protecting the public from secondhand smoke is contradicted by the nature of the product sold by tobacco retail outlets.

Additionally, the Legislature could rationally conclude that the narrow scope of the exemption makes it less likely that nonsmokers, including potential nonsmoking employees, would be exposed to secondhand smoke. By limiting the definition of tobacco retail outlets to establishments that sell only tobacco and products directly related to tobacco, the text demonstrates that the Legislature intended this as a very limited exemption.

The Legislature was not required to "choose between attacking every aspect of the problem or not attacking the problem

---

[3] See § 71-5728.

[4] See *id*.

[5] *Hug v. City of Omaha*, 275 Neb. 820, 749 N.W.2d 884 (2008).

at all."[6] This principle, which the majority quotes in upholding the guestrooms exemption, also applies to the tobacco retail outlets exemption. As to guestrooms, the majority concedes that secondhand smoke is equally harmful in public and private places. The majority also concedes that this was a legitimate policy decision. And the majority recognizes a "logical basis . . . to conclude that guestrooms are akin to private residences." In enacting the tobacco retail outlets exemption, the Legislature merely limited the otherwise broad reach of the Act from locations already dominated by the much greater risk of firsthand smoke. Given the mandate to resolve reasonable doubts in favor of the legislation, I would conclude that this was an equally legitimate policy decision.

I recognize that the exemption may not be perfect, in that some nonsmokers may be exposed to secondhand smoke. But the Legislature is presumed to have acted within its constitutional power despite that, in practice, its laws may result in some inequality.[7] When I apply the principles of law articulated by the majority, I conclude that there is at least a reasonable doubt whether the exemption is unconstitutional. Thus, those principles require that I uphold the exemption despite my personal distaste for or objection to firsthand or secondhand tobacco smoke. I therefore respectfully dissent from the portion of the court's opinion finding the tobacco retail outlets exemption unconstitutional.

Pirtle, Judge, joins in this dissent.

---

[6] See *Bergan Mercy Health Sys. v. Haven*, 260 Neb. 846, 856, 620 N.W.2d 339, 347 (2000).

[7] See *Connelly, supra* note 1.